UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HAROLD GENE LUCAS,

                Petitioner,

vs.                          Case No.  2:04-cv-222-FtM-29DNF

JAMES V. CROSBY, JR.,

                Respondent.
_____

## OPINION AND ORDER

This matter is before the Court on Petitioner Harold Gene Lucas's (hereinafter "Petitioner" or "Lucas") Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. #1) and Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. #9). The Respondent has filed a Response in Opposition to Petition (Doc. #14), supported by exhibits (Doc. #16). Petitioner filed a Reply to the Response (Doc. #17).

Upon review, the Court determines that the federal habeas petition should be dismissed in part as procedurally defaulted and that relief should otherwise be denied.

### I. Procedural History

**A.  Trial and First Sentence:**

On August 30, 1976, Lucas was indicted by a Florida grand jury and charged with the first-degree murder of Anthia Jill Piper ("Jill Piper") and two counts of attempted first-degree murder for the shootings of Terri L. Rice and Richard Byrd, Jr. (Doc. #16, Exh. A4, p. 549.)  These offenses were alleged to have occurred at

Jill Piper's home in Bonita Springs, Florida, on August 14, 1976. (Id.)  Petitioner pled not guilty, and a jury trial commenced on January 11, 1977 before the Honorable Thomas W. Shands. (Doc. #16, Exhs. A1-A3.)  The underlying facts presented at trial were accurately summarized by the Florida Supreme Court on Petitioner's initial direct appeal:

> The victim, Jill Piper, was appellant's girlfriend.  A week before her death, she and appellant became embroiled in a heated argument which continued for several days. On the night of the murder, appellant arrived at Jill's house carrying a shotgun.  Anticipating a visit by appellant, the victim and her friends, Terri Rice and Ricky Byrd, armed themselves. They were surprised, however, when appellant suddenly appeared from the side of the house, catching them in the yard, and began shooting.  Jill Piper was struck immediately, but Terri and Ricky ran unharmed into the house to hide in a bedroom.  The evidence is unclear as to what next occurred. According to Ricky's testimony, Jill came into the house, struggled with appellant, and was shot several more times.  In any event, appellant soon burst into the bedroom where Ricky and Terri were hiding and shot them. Jill's body was found outside the house.

Lucas v. State, 376 So. 2d 1149, 1150 (Fla. 1979).  The jury convicted Lucas of all three counts.  (Doc. #16, Exh. A3, pp. 543-45.)  Additional facts will be set forth below as needed to resolve specific issues.

On January 14, 1977, the trial court commenced the penalty phase.  (Doc. #16, Exh. A4, pp. 616-73.)  At its conclusion, all twelve members of the jury recommended that the court impose the death sentence on Lucas for the murder of Jill Piper.  (Id. at pp. 664-68.)

On February 9, 1977, the trial judge sentenced Lucas to death for the murder of Jill Piper and to thirty years imprisonment for each of the two counts of attempted first-degree murder, to be served consecutively with each other.  (Id. at p. 683.)  At sentencing, the trial judge identified one mitigating factor - that there was no showing that Lucas had any substantial past criminal record.  (Id. at p. 650, 679-80.)  The trial judge also identified two aggravating factors: (1) That the first degree murder was committed "only seconds, or at best, only minutes, before he committed two other felonies . . . two separate counts of attempted first degree murder; and (2) That each of the three crimes committed by Lucas was carried out "with such indifference to others as to create great possible injury to other[s]," and that each crime was carried out in such a fashion as to be considered "especially heinous, atrocious, and cruel."  (Id. at p. 680.)

**B.  First Appeal of Conviction and Sentence:**

Petitioner filed a direct appeal of his convictions and sentences with the Florida Supreme Court, Lucas, 376 So. 2d 1149 (Fla. 1979), raising the following five grounds: (1) The trial court erred by admitting testimony of a rebuttal witness whose name had not been furnished to the defense, without first conducting an inquiry into all surrounding circumstances pursuant to Florida Rule of Criminal Procedure 3.220, which resulted in a deprivation of Lucas's constitutional right to confront witnesses against him; (2) The trial court erred in imposing the death sentence because it

-3-

failed to consider relevant mitigating circumstances pursuant to Florida Statutes Section 921.141(6); (3) The trial court erred in imposing the death sentence because the capital felony was not "especially heinous, atrocious, or cruel," and this standard was erroneously applied to the two attempted murders; (4) The trial court erred in imposing the death sentence because the capital felony was not carried out with such indifference as to create a great risk of harm to many persons; and, (5) The trial court erred in imposing the death sentence because the court improperly considered a non-statutory aggravating factor-that the murder occurred only minutes before Lucas committed two other felonies of attempted murder. (Doc. #16, Exh. A9.) Lucas also filed a supplemental brief, arguing that Florida's capital sentencing statute was unconstitutional because it restricted the mitigating circumstances to be considered in imposing the death sentence. (Doc. #16, Exh. A12.)

The Florida Supreme Court rejected Lucas's claim that the trial court committed reversible error by allowing an undisclosed rebuttal witness to testify in derogation of Florida Rule of Criminal Procedure 3.220. Lucas, 376 So. 2d at 1151-52; Doc. #16, Exh. A13. The Court determined that non-compliance with the rule "does not require automatic reversal," and therefore, Lucas's attorney's failure to raise a timely objection precluded the need for the trial court to conduct a further inquiry. Id. The Florida Supreme Court also determined that the following aggravating

-4-

factors were properly considered by the trial court in imposing the death sentence: (1) that defendant "was previously convicted of another capital felony" (namely, two convictions for attempted murder entered contemporaneously with the murder conviction, which were nonetheless "entered 'previous' to sentencing and were therefore appropriately considered by the trial judge as an aggravating circumstance;" and, (2) "[t]hat each of the three crimes committed by the Defendant were carried out with such an indifference to others as to create great possible injury to others," and that the nature of the crime was heinous and atrocious.  Id. at 1152-53.  The Florida Supreme Court also rejected Lucas's arguments that the trial court failed to consider, in mitigation, that Lucas "was under extreme mental or emotional disturbance at the time of the commission of the offense" and "could not appreciate the criminality of his conduct."  Id. at 1153-54.  The Florida Supreme Court vacated the death sentence, however, finding that the trial court erred when it considered the non-statutory aggravating factor that the attempted murders of Terri Rice and Richard Byrd, Jr. were heinous and atrocious.  Id. at 1153.  The Florida Supreme Court affirmed the conviction and remanded the case for re-sentencing without the benefit of a new sentence recommendation by another jury.  Id. at 1154.

**C.  Proceedings on Remand After First Appeal:**

On remand to the trial court, Petitioner's counsel filed motions requesting that the trial court: grant a continuance,

preclude re-imposition of the death penalty, permit Petitioner to present character and background testimony from family members prior to resentencing, and impanel a jury to make a new sentence recommendation. (Doc. #16, Exh. A17, pp. 9-15, 17-65.)  The trial court denied the motions and again imposed the death sentence, amending the sentencing statement to eliminate any mention of the heinous, atrocious, or cruel nature of the two attempted murders. (Id. at 66-68.)  This was based upon the evidence produced in the original penalty phase proceedings and the Florida Supreme Court's mandate, which the trial court narrowly construed.  (See id. at 54-55, 62-63.)

**D.   Second Appeal of Sentence:**

Petitioner filed a direct appeal of his second death sentence with the Florida Supreme Court, raising the following four grounds on appeal: (1) The trial court at re-sentencing abused its discretion by not properly re-weighing and re-evaluating the valid mitigating and aggravating circumstances, and thus failed to comply with the mandate of the Florida Supreme Court and imposed a death sentence violative of the Eighth and Fourteenth Amendments; (2) The trial court erred in refusing to allow Petitioner to present evidence of a non-statutory mitigating factor, his character and background, and thus denied the Petitioner's rights under the Eighth and Fourteenth Amendments; (3) The trial judge erred in refusing to empanel an advisory jury to consider the proffered mitigating evidence of Petitioner's character and background,

thereby depriving him of his rights under the Eighth and Fourteenth Amendments to the United States Constitution; and, (4) The trial court erred in imposing the death penalty because Section 921.141, Florida Statutes, is unconstitutional as applied to the Petitioner under the Eight and Fourteenth Amendments.  (Doc. #16, Exhs. A19-A21.)

The Florida Supreme Court vacated the death penalty sentence, finding that the record did not show the judge used "reasoned judgment in reweighing the factors." Lucas v. State, 417 So. 2d 250, 251-52 (Fla. 1982).  The Florida Supreme Court remanded the cause for the trial judge to conduct a new sentencing proceeding. Id. at 252.

**E.  Proceedings on Remand After Second Appeal:**

At this juncture, the Honorable Thomas S. Reese replaced Judge Shands, who had passed away.  On remand, Petitioner's counsel filed motions requesting that the trial court: impanel a jury to make a new sentencing recommendation; appoint a toxicologist and psychologist to assist in preparation of evidence of statutory and non-statutory mitigation; allow introduction of statutory mitigation; permit Petitioner to present character and background testimony from family members prior to resentencing (i.e., introduce evidence of nonstatutory mitigation); preclude re-imposition of the death sentence; and, preclude death sentence due to lack of jurisdiction.  (See Doc. #16, Exhs. B6, B7.)  The trial

court denied these motions.  (Doc. #16, Exh. B6, pp. 353-56; Exh. B7, p. 409.)

After reviewing the trial transcripts, the penalty proceedings transcripts, and the post-sentencing proceedings, and after re-weighing the mitigating and aggravating circumstances, Judge Reese sentenced Petitioner to death for the first-degree murder conviction and thirty years imprisonment for each of the two attempted first-degree murder convictions.  (Doc. #16, Exh. B7, pp. 400-3, 405-7.)  Judge Reese identified one mitigating factor - that Petitioner lacked a significant history of prior criminal activity. (Id. at 401-2.)  He also identified two aggravating factors: (1) That Petitioner had previously been convicted of two violent felonies (the two attempted murders), which were committed in such close spatial and temporal proximity to the murder that they "became part of the conduct surrounding the murder and clearly established beyond a reasonable doubt that [Petitioner] knowingly created a great risk of death to many persons;" and (2) That the sadistic and cruel nature of the sequence of events attributable to Petitioner "fulfills the meaning of a heinous and atrocious act." (Id. at 402-3.)

**F.  Third Appeal of Sentence:**

Petitioner filed a third direct appeal of his death sentence with the Florida Supreme Court, raising the following seven grounds: (1) The trial court erred in not allowing Petitioner to present additional evidence tending to prove the existence of

statutory mitigating circumstances; (2) The trial court erred in not allowing Petitioner to present evidence of his character and background as non-statutory mitigating factors; (3) The trial court erred in refusing to appoint a toxicologist and a psychologist for the purpose of assisting Petitioner in the preparation and presentation of statutory and non-statutory mitigating evidence; (4) The trial court erred in finding the aggravating circumstance that the homicide created a great risk of death to many persons; (5) The  sentencing judge erred in not requiring the presentation of live testimony as to aggravating and mitigating circumstances before re-imposing a death sentence, since he was not the original sentencing judge and never had the opportunity to weigh the demeanor and credibility of the witnesses; (6) The trial court erred in refusing to empanel a new jury for the purpose of obtaining a new sentencing recommendation, because the original jury was erroneously not presented with valid mitigating evidence, and was erroneously presented non-statutory aggravating evidence; and, (7) The trial court erred in sentencing Petitioner to death because such a sentence is disproportional to the crime he committed, in violation of the Eighth and Fourteenth Amendments. (Doc. #16, Exh. B8.)

The Florida Supreme Court remanded for a new sentencing proceeding to be held before a newly-empaneled jury, finding that "both sides should have been allowed to present additional testimony and argument." Lucas v. State, 490 So. 2d 943, 945 (Fla.

1986).   The Florida Supreme Court also determined that the
"aggravating factor of creating great risk of death to many people
[was] not applicable" to the case.   Id. at 946.

## G.   Proceedings on Remand After Third Appeal:

On remand, the trial court empaneled a new jury for the
re-sentencing, and both sides presented testimony and argument.
(Doc. #16, Exhs. C1-C4.)   At the conclusion of the re-sentencing
proceeding, the jury recommended by a vote of 11 to 1 that the
court impose the death sentence on Petitioner. (Doc. #16, Exh. C4,
p. 807; Exh. C6, p. 888.)   The trial judge considered, and
ultimately discounted, the following mitigating circumstances
raised by Petitioner: that Petitioner had no significant history of
prior criminal activity; that Petitioner was "under the influence
of extreme mental or emotional disturbance;" that there was
"substantial impairment" of Petitioner's "capacity to appreciate
the criminality of his conduct or conform his conduct to the
requirements of law;" and, Petitioner's age at the time of the
crime.  (Doc. #16, Exh. C6, p. 889.)   The trial judge also found
the following aggravating factors: that at the time of sentencing,
Petitioner had been convicted of two felonies (the attempted
murders); and that the sadistic and cruel nature of the sequence of
events established that the acts were atrocious and cruel.  (Id. at
890, 892.)  Upon weighing the evidence presented and the mitigating
and aggravating factors, the trial judge found that "the
aggravating circumstances substantially outweigh[ed] the mitigating

circumstances and require[d] the imposition of the death penalty."
(<u>Id.</u> at 892.)  On May 7, 1987, the trial judge sentenced Petitioner
to death.  (<u>Id.</u>)

## H.   Fourth Appeal of Sentence:

Petitioner filed a fourth direct appeal of his death sentence
with the Florida Supreme Court, raising the following ten grounds:
(1) The jury's recommendation of the death penalty was tainted by
the prosecutor's improper voir dire and closing argument, which
misled the jury in its consideration of mitigating evidence; (2)
The trial court erred in taking judicial notice of the fact that
Petitioner was found guilty on January 14, 1977 of the attempted
first-degree murders of Terri L. Rice and Richard Byrd, Jr., and in
so informing the jury; (3) The trial court erred in allowing the
State to introduce at the penalty trial evidence of the mental
anguish and physical pain endured by Terri L. Rice and Richard
Byrd, Jr.; (4) The trial court erred in permitting the State to
introduce damaging hearsay testimony against the Petitioner while
denying Petitioner the opportunity to present hearsay testimony
that was critical to his defense; (5) The trial court erred in
permitting the State to introduce evidence of a collateral crime of
burglary, when the State had failed to give Petitioner the
statutorily-required notice that it intended to introduce such
evidence; (6) The trial court erred in permitting the jurors to
take notes during Petitioner's penalty trial and to use their notes
during deliberations, without instructing the jury on the proper

way to take and use notes; (7) The State's use of peremptory challenges to systematically exclude all potential jurors who expressed reservations about the death penalty produced a jury that was uncommonly willing to condemn Petitioner to die and thus violated Petitioner's Sixth and Fourteenth Amendment right to be tried by an impartial jury; (8) The sentencing order by the trial court was not sufficiently clear to establish that the court engaged in a reasoned weighing of the aggravating and mitigating circumstances; (9) The trial court erred in sentencing Petitioner to die in the electric chair because the sentencing weighing process included improper aggravating circumstances and excluded existing mitigating circumstances, rendering the death sentence unconstitutional under the Eighth and Fourteenth Amendments; and (10) The trial court erred in sentencing Petitioner to death because such a sentence is disproportional to the crime he committed, in violation to the Eighth and Fourteenth Amendments. (Doc. #16, Exh. C8.)

The Petitioner also filed a Supplemental Brief, arguing that the trial court erred in refusing to allow Petitioner's counsel to elicit from the State's witness whether the homicide victim, Jill Piper, was a drug user. (Doc. #16, Exh. C9.)

The Florida Supreme Court vacated Petitioner's sentence and remanded for the trial court to reconsider and re-write the findings of fact, without requiring the trial court to empanel a new jury. Lucas v. State, 568 So. 2d 18, 24 (Fla. 1990). In

making its determination, the Florida Supreme Court rejected on the merits the first, third, fifth, sixth, and seventh objections raised by Petitioner's appellate brief (as listed above), as well as the objection raised in Petitioner's supplemental brief. Id. at 20-24.  The Florida Supreme Court also rejected the second and fourth issues raised in Petitioner's appellate brief because Petitioner's counsel had failed to timely raise objections to these; the Florida Supreme Court did not find fundamental error to be involved, therefore, these objections were not preserved for appeal.  Id. at 20-22.  As to Petitioner's eight, ninth and tenth objections, the Florida Supreme Court determined that the trial court's order addressing the mitigating and aggravating circumstances did not mention nonstatutory mitigating factors advanced by Petitioner, and that the order was not clear enough to illustrate that the death sentence was the "result of reasoned judgment."  Id. at 23-24.  Further, the Florida Supreme Court stated that Petitioner should identify for the trial court any specific non-statutory mitigating circumstances that Petitioner sought to establish, and that the trial court could allow both sides to present argument regarding those circumstances.  Id.

## I.  Proceedings on Remand After Fourth Appeal:

Petitioner filed motions requesting that the trial court: declare Florida Statutes, Section 921.141(5)(h), unconstitutional; allow Petitioner to present witnesses to establish statutory mitigating circumstances and non-statutory mitigating evidence;

-13-

and, preclude death as a possible punishment.  (Doc. #16, Exh. D8, pp. 1001-1018.)   The trial court denied each of these motions. (Id. at pp. 1020-25.)

On remand, the trial judge reviewed the record, held a resentencing hearing (Doc. #16, Exh. D1) and again sentenced Lucas to death.  (Doc. #16, Exh. D7, pp. 965-982.)   The trial court identified and found "proven beyond every reasonable doubt through the evidence presented by the State at the penalty phase of the trial," two aggravating factors: (1) That Petitioner was previously convicted of a felony involving the use or threat of violence to the person (the attempted murders); and (2) That the first-degree murder of Jill Piper was especially heinous, atrocious, and cruel. (Id. at pp. 2-6.)   Petitioner identified, and the trial court addressed, a total of fifteen statutory and nonstatutory mitigating factors to be considered upon resentencing:  (1) That the murder of Jill Piper was committed while Petitioner was under the influence of extreme mental or emotional disturbance (given very little weight); (2) That Petitioner acted under extreme duress in committing the murder (given no meaningful weight); (3) That Petitioner's capacity to conform the volitional aspects of his conduct to the requirements of the law was substantially impaired (not sufficient to counter-balance either of the aggravating factors established); (4) That the murder was done for emotional or passionate reasons rather than from mere cold calculation (inapplicable, as trial court had not found the aggravating factor

of cold, calculated premeditation); (5) That Petitioner had displayed good conduct while on death row since 1977 and had experienced change and self-improvement while in prison (given very little weight); (6) That Petitioner has no significant history of prior criminal activity because the State could not establish a "history" of prior criminal conduct by contemporaneous crimes (insufficient to mitigate the punishment and fails to counter-balance the aggravating factors); (7) That Petitioner has shown genuine remorse (given very little credibility and weight when compared to the aggravating factors); (8) That Petitioner cared deeply for the victim (given very little credibility and weight when compared to the aggravating factors); (9) That the structured environment of prison served as rehabilitation for Petitioner and that Petitioner has good potential for rehabilitation (given very little credibility and weight when compared to the aggravating factors); (10) That Petitioner had suffered extreme emotional impact from having been sentenced to death four times and having the sentence set aside again only to face re-sentencing (incapable of mitigating punishment); (11) That Petitioner was physically and psychologically abused by his alcoholic father in his youth (incapable of mitigating punishment); (12) That Petitioner suffered from chronic and extreme alcohol and drug abuse since his pre-teen years (incapable of mitigating punishment); (13) That Petitioner was a nice person when sober and was trusted with the money and younger children of several

-15-

witnesses (incapable of mitigating punishment and given no weight); (14) That Petitioner was under the influence of PCP, marijuana, and alcohol on the day of the killing, which resulted in impaired ability to appreciate the criminality of his conduct (insufficient to counter-balance the aggravating factors and given no weight or credibility); and, (15) That Petitioner held gainful employment (incapable of mitigating punishment). (Doc. #16, Exh. D1, pp. 186-99; Exh. D7, pp. 971-981.)

**J.   Fifth Appeal of Sentence:**

Petitioner filed a fifth direct appeal of his death sentence with the Florida Supreme Court, raising the following seven grounds: (1) the trial court denied Petitioner's constitutional rights by refusing to allow him to present additional evidence to establish mitigating circumstances; (2) the trial court's procedure denied Petitioner's constitutional rights because instead of holding a single hearing at which the court merely informed Petitioner of his already-prepared sentencing decision, the court should have first received evidence and argument regarding the appropriate sentence and then imposed the sentence after due deliberation; (3) The court may have been improperly influenced by irrelevant victim impact statements in making its decision to sentence Petitioner to death; (4) The trial court erred in finding that the homicide of Jill Piper was especially heinous, atrocious, and cruel, as the State did not prove this aggravating circumstance beyond a reasonable doubt; (5) Petitioner's death sentence

violated the Eighth and Fourteenth Amendments because the "especially heinous, atrocious, or cruel" aggravating circumstance is vague, is applied arbitrarily and capriciously, and does not genuinely narrow the class of persons eligible for the death penalty; (6) The trial court's sentencing findings do not show that the judge gave proper consideration to all mitigating evidence in the record and are not sufficiently clear to support the sentence of death imposed on Petitioner; and, (7) The trial court erred in sentencing Petitioner to death because such a sentence is disproportionate to the crime committed. (Doc. #16, Exh. D10.)

Petitioner also filed a Supplemental Brief, arguing that the death sentence cannot stand because it is predicated, at least in part, on a tainted jury recommendation, as the jury was given an unconstitutionally vague instruction on the "especially heinous, atrocious, or cruel" aggravating circumstance. (Doc. #16, Exh. D13.)

On December 24, 1992, the Florida Supreme Court affirmed the trial court's death sentence. Lucas v. State, 613 So. 2d 408, 411 (Fla. 1992). (Doc. #16, Exh. D15.) Petitioner filed a motion for a rehearing on January 6, 1993 (Doc. #16, Exh. D16), which was denied on March 5, 1993 (Doc. #16, Exh. D17).

On June 3, 1993, Petitioner filed a Petition for Writ of Certiorari to the United States Supreme Court, arguing that Florida's "especially heinous, atrocious and cruel" aggravating circumstance is vague, is applied arbitrarily and capriciously, and

-17-

does not genuinely narrow the class of persons eligible for the death penalty, in violation of the Eighth and Fourteenth Amendments. (Doc. #16, Exh. E1.)  The United States Supreme Court denied the Petition for *Writ of Certiorari* on October 4, 1993. <u>Lucas v. Florida</u>, 510 U.S. 845 (1993).  (Doc. #16, Exh. E3.)

**K.   State Post Conviction Procedures, Rule 3.850:**

On October 3, 1994, Petitioner filed his original Rule 3.850 motion.  Ultimately, on January 19, 1999, Petitioner filed his operative Amended Motion to Vacate Judgments of Conviction and Sentences, pursuant to Florida Rule of Criminal Procedure 3.850, in the state trial court.  (Doc. #16, Exh. F1.)  The motion alleged the following seven grounds for post-conviction relief: (1) The representation of Petitioner's counsel was deficient during the guilt phase of his trial in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights, and of his corresponding rights under the provisions of the Florida Constitution; (2) The representation of Petitioner's trial counsel was prejudicially deficient during the penalty phase of his trial in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights, and of his corresponding rights under the provisions of the Florida Constitution; (3) Petitioner's incarceration on death row for, at present, twenty-two years, due to errors of the State constitutes cruel and unusual punishment in violation of the Eighth Amendment, Due Process Clause of the Fourteenth Amendment, and provisions of

international law, and execution after Petitioner has served the maximum length of time he would have served had he received a life sentence at the time of his conviction is barred by the doctrine of laches; (4) It was a violation of the Due Process Clause of the Fourteenth Amendment for the trial court to find as an aggravating circumstance that Petitioner had previously been convicted of another felony involving the use of the threat of violence to a person; (5) It was unconstitutional under the Sixth, Eighth, and Fourteenth Amendments for the trial court to admit into evidence, and for the jury to hear and consider, non-statutory aggravating evidence and for the State to argue that evidence in support of the death sentence; (6) There are no constitutionally sustainable aggravators to support Petitioner's death sentence and thus the sentence has been imposed in violation of the Sixth, Eighth, and Fourteenth Amendments; and (7) Petitioner's conviction and sentences are unreliable and violate the provisions of the Sixth, Eighth, and Fourteenth Amendments, and the corresponding provisions of the Florida Constitution, because of judicial and representational conflicts of interest, bias, and improper action by the State.  (Id.)

The trial court conducted an evidentiary hearing pertaining to Petitioner's allegations of ineffective assistance of counsel, which included the testimony of Gene Taylor, the public defender who defended Petitioner in the guilt and penalty phases of the trial; Robert R. Jacobs, II, the public defender who represented

-19-

Petitioner at re-sentencing following Petitioner's fourth appeal; and several experts.  (Doc. #16, Exhs. F3-F6.)  Following the evidentiary hearing, the judge entered an Order Denying Amended Motion to Vacate Judgments of Conviction and Sentences on June 22, 2001.  (Doc. #16, Exh. F7, pp. 862-906.)

**L.  Appeal of Rule 3.850 and State Habeas Corpus Petition:**

The Petitioner appealed the trial court's denial of the Motion to Vacate and concurrently sought a Writ of Habeas Corpus from the Florida Supreme Court.  Petitioner's appeal of the Rule 3.850 Motion raised the following grounds: (1) The trial court's ruling following the post-conviction evidentiary hearing was erroneous because (a) trial counsel was ineffective by failing to show that the victim did not suffer a beating at the time of the shooting, causing Petitioner to suffer prejudice by having an improper death sentence imposed upon him in violation of his constitutional rights, and (b) trial counsel was ineffective by not determining the drug used by Petitioner at the time of the crime, causing Petitioner to suffer prejudice by having an improper death sentence imposed upon him in violation of his constitutional rights; and (2) The trial court erred by failing to grant an evidentiary hearing so Petitioner could establish that the length of his incarceration on death row constituted cruel and unusual punishment in violation of the Eighth Amendment and Due Process Clause of the Fourteenth Amendment.  (Doc. #16, Exh. F9.)

-20-

In his Petition for Writ of Habeas Corpus, Petitioner argued that the Florida death sentencing statute as applied is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and corresponding provisions of the Florida Constitution. (Doc. #16, Exh. F12.)

The Florida Supreme Court affirmed the trial court's denial of the Rule 3.850 Motion and further denied the Petition for Writ of Habeas Corpus. Lucas v. State, 841 So. 2d 380, 389-90 (Fla. 2003). The Florida Supreme Court first rejected Petitioner's claim that counsel was ineffective during the 1987 penalty phase for failing to show that Jill Piper was neither beaten nor dragged at the time of the shooting. Id. at 385-87. The Court determined that the sentencing court did not place any reliance upon the evidence that Jill Piper had been dragged. Further, Petitioner's counsel presented two experts to prove that Jill Piper was not beaten during the crime, and any additional evidence presented would not have affected the court's ruling. Id. The Florida Supreme Court also rejected Petitioner's claim that his 1977 trial counsel was ineffective for failing to determine the specific drug that Petitioner ingested on the day of the murder. The Court determined that counsel provided reasonably competent performance in Petitioner's defense and, even if counsel's performance was deficient, Petitioner suffered no prejudice as he was not procedurally barred from presenting evidence of the drug at the 1987 re-sentencing hearing. Id. at 387-88. As to Petitioner's

third claim, the Court ruled that the trial court did not err in denying him an evidentiary hearing as to whether his incarceration on death row constituted cruel and unusual punishment because the claim is facially invalid.  Id. at 388-89.  Finally, the Court determined that Lucas was not entitled to relief on his state habeas petition.  Id. at 389-90.  Petitioner then filed a motion for rehearing on January 23, 2003 (Doc. #16, Exh. F16), which the Florida Supreme Court denied on March 14, 2003 (Doc. #16, Exh. F17.)

## II.  Section 2254 Petition

Petitioner raises the following twenty grounds in the instant § 2254 Petition: (1) Petitioner was denied his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution: (a) by the trial court admitting the testimony of a rebuttal witness whose name had not been furnished to the defense pursuant to Florida Rule of Criminal Procedure 3.220, without first conducting an inquiry into all surrounding circumstances, thus depriving Petitioner his constitutional right of confrontation of witnesses against him; and (b) when his trial counsel ineffectively assisted him by failing to point out the controlling case authority to the trial judge which mandated such an inquiry; (2) Petitioner was denied his Sixth, Eighth, and Fourteenth Amendment rights to due process and a fair trial during the guilt phase of his trial when his trial counsel ineffectively assisted him by failing to point out the controlling case authority to the trial judge, which

-22-

mandated such an inquiry regarding a rebuttal witness; (3) The trial court erred by failing to grant an evidentiary hearing so Petitioner could establish that the length of his incarceration on Death Row constitutes cruel and unusual punishment in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment; (4) Petitioner was denied the effective assistance of counsel during the guilt phase of his trial in violation of his Sixth, Eighth, and Fourteenth Amendment rights to due process and a fair trial when his trial attorney failed to investigate what kind of drugs Petitioner had ingested within hours prior to the homicide and present expert testimony as to their effects on his ability to form the requisite intent and premeditation to sustain a conviction of First-degree Murder; (5) Petitioner was denied the effective assistance of counsel during the penalty phase of his re-sentencing hearing in 1987 in violation of his Sixth, Eighth, and Fourteenth Amendment rights to due process and a fair trial when his trial attorney failed to investigate what kind of drugs Petitioner had ingested within hours prior to the homicide and present expert testimony as to their effects on his ability to form the requisite intent and premeditation to sustain a conviction of First-degree Murder; (6) The trial court based its finding of the aggravating factor of Heinous, Atrocious and Cruel (HAC) on non-existent evidence in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights to due process and a fair trial; trial attorney should have shown that there could not have been a

beating inside the house, and in that respect, negate the HAC aggravator; (7) It was a violation of the Due Process Clause of the Fourteenth Amendment for the trial court to find as an aggravating circumstance that Petitioner had previously been convicted of another felony involving the use of the threat of violence to a person; (8) It was unconstitutional under the Sixth, Eighth, and Fourteenth Amendments for the trial court to admit into evidence, and for the jury to hear and consider, non-statutory aggravating evidence and for the state to argue that evidence in support of the death sentence; (9) There are no constitutionally sustainable aggravating factors to support Petitioner's death sentence, and thus, the sentence has been imposed in violation of the Sixth, Eighth, and Fourteenth Amendments; (10) Petitioner's conviction and sentences are unreliable and violate the provisions of the Sixth, Eighth, and Fourteenth Amendments because of judicial and representational conflicts of interest, bias, and improper action by the State; (11) The jury's sentencing recommendation was tainted by the prosecutor's improper voir dire and closing argument, which misled the jury in its consideration of mitigating evidence, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; (12) The trial court erred in taking judicial notice of the fact that Petitioner was found guilty on January 14, 1977 of the attempted first-degree murders of Terri L. Rice and Richard Byrd, Jr., and in so informing the jury, violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; (13) The trial court erred

-24-

in allowing the State to introduce, at Petitioner's penalty trial, evidence of the mental anguish and physical pain endured by Terri Rice and Richard Byrd, Jr., in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; (14) The trial court erred in permitting the State to introduce damaging hearsay testimony against Petitioner, while denying Petitioner the opportunity to present hearsay testimony that was critical to his defense, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; (15) The trial court erred in permitting the State to introduce prejudicial evidence of a collateral crime (burglary) when the State had failed to give Petitioner the statutorily required notice that it intended to introduce this evidence, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; (16) The trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights in permitting the jurors to take notes during Petitioner's penalty trial, and to use their notes during deliberations, without instructing the jury on the proper way to take and use notes; (17) The prosecutor's use of peremptory challenges, to systematically exclude all potential jurors who expressed reservations about the death penalty, produced a jury that was uncommonly willing to condemn Petitioner to die and thereby violated Petitioner's Sixth, Eighth, and Fourteenth Amendment right to be tried by an impartial jury; (18) The Sentencing Order entered by the trial court is not sufficiently clear to establish that the court engaged in a reasoned weighing of

aggravating and mitigating circumstances, and so will not support the sentence of death imposed on Petitioner, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; (19) The trial court unconstitutionally misapplied Florida's capital sentencing statute by including improper aggravating circumstances and excluding existing mitigating circumstances in the sentencing weighing process, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights; and, (20) The Florida death sentencing statute as applied to Petitioner is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments, under the holding in Ring v. Arizona, 536 U.S. 584 (2002).  (Doc. #1, pp. 9-39.)

### III.  Applicable § 2254 Law

Because Petitioner filed his § 2254 Petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Several aspects of § 2254, as amended by the AEDPA, are relevant to a review of this Petition.

**A.   Cognizable Claims:**

A federal court may entertain an application for a writ of habeas corpus, from a person in state custody pursuant to a state court judgment, only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  A claimed violation of state law is generally insufficient to warrant review or relief by a federal court under § 2254.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000).  Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair."  Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

**B.   Exhaustion of  State Remedies:**

A petitioner, even when asserting grounds that warrant review by a federal court under § 2254, must have first raised such grounds before the state courts, thereby giving the state courts the initial opportunity to address the federal issues.  A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."  28 U.S.C.  2254(b)(1)(A).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also Duncan v. Henry, 513 U.S. 364, 365-66 (1995). "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). See also Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003), cert. denied sub nom. Pruitt v. Hooks, 543 U.S. 838 (2004). To properly exhaust a claim, a petitioner must present the same claim to the state court that he urges the federal court to consider. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (citations omitted); Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004). As to ineffective assistance of counsel claims, a petitioner must have presented each instance of alleged ineffective assistance to the state court in such a manner that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. Ogle, 488 F.3d at 1368 (citations omitted); Kelley, 377 F.3d at 1344-45. A state prisoner need not file a petition for certiorari with the U.S. Supreme Court, however, in order to exhaust state remedies because the U.S. Supreme Court is not considered to be a part of a "State's post-conviction procedures." Lawrence v. Florida, 127 S. Ct. 1079, 1083 (2007).

When presented with a "mixed" petition, i.e., one containing both unexhausted and exhausted claims, a district court is ordinarily required to either dismiss the petition, <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), or, in limited circumstances and under the district court's discretion, "grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citing <u>Rhines</u>, 544 U.S. at 277-79). However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, the Eleventh Circuit has held that a district court can consider the petition but treat those unexhausted claims as procedurally defaulted. <u>Ogle</u>, 488 F.3d at 1370. Additionally, while under the AEDPA a federal court may not grant a habeas petition that contains unexhausted claims, it may deny such a petition on the merits. <u>LeCroy v. Sec'y, Fla. Dep't of Corr.</u>, 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . .." <u>Smith</u>, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First,

a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).  "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quoting Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different."  Henderson, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is

more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

## C.  Claims Adjudicated in State Court

Even if a claim is federal in nature and has been properly exhausted, it is subject to additional restrictions under § 2254 that reflect a high level of deference to the state court's decision.  See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson, 527 F.3d at 1146; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  "Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  Carey v. Musladin, 549 U.S. 70, ____ , 127 S. Ct.

649, 653 (2006), citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).   In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law."   <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a disparate result.   <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16.   Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them."   <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526,

531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review <u>de novo</u>; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this

"presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91.  This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1046 (2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. <u>Rolling v. Crosby</u>, 438 F.3d 1296, 1299 (11th Cir.), <u>cert. denied</u> <u>sub nom. Rolling v. McDonough</u>, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim.  <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1313 (11th Cir. 2003).

## D.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  <u>Newland</u>, 527 F.3d at 1184.  In <u>Strickland</u>,

the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687-88. Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not

ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

## IV.   Issues  Discussion

Issues related to guilt were decided in the original 1977 trial, and reviewed by the Florida Supreme Court in Lucas v. State, 376 So. 2d 1149 (Fla. 1979).  The operative penalty-phase jury trial was conducted in 1987 after a remand pursuant to the third direct appeal (Doc. #16, Exhs. C1-C4); the operative sentencing order is that entered by Judge Reese on May 14, 1991 (Doc. #16, Exh. D7, pp. 965-982), and affirmed by the Florida Supreme Court in Lucas v. State, 613 So. 2d 408 (Fla. 1992).

## A.   Ground One: Notice of Rebuttal Witness

Petitioner alleges that the trial court erred when it admitted the testimony of a rebuttal witness at trial whose name had not been furnished to the defense pursuant to Florida Rule of Criminal Procedure 3.220 without first conducting an inquiry into the circumstances surrounding the State's non-compliance with the Rule. Petitioner asserts that as a result, he was deprived of his constitutional right to confront witnesses against him, in

violation of the Sixth, Eighth, and Fourteenth Amendments.   (Doc. #1, pp. 9-10; Doc. #9, pp. 9-15)[1]

### (1) Exhaustion and Procedural Default:

Respondent asserts that Petitioner has not exhausted the first component of this ground at the state court level.   (Doc. #14, pp. 26-27; 35-36).   While Petitioner must fairly present the federal claim to a state court in his petition or brief, this can be done "by citing in conjunction with the [state] claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004).[2]   While the Florida Supreme Court in Lucas, 376 So. 2d at 1151-52, did not specifically discuss a federal constitutional claim, this "does not mean the claim was not presented to it."   Dye v. Hofbauer, 546 U.S. 1, 3 (2005).

Point I of Petitioner's Initial Brief of Appellant on his first direct appeal to the Florida Supreme Court argued that allowing the rebuttal witness to testify without complying with Florida Rule of Criminal Procedure 3.220 deprived Petitioner "of

---

[1]The second component of Ground 1 is the same issue as in Ground 2, and is discussed therein.

[2]The Eleventh Circuit has cautioned that this language must be applied with common sense and in light of the purpose of the exhaustion requirement, and the exhaustion requirement is not satisfied where petitioner merely "scatter[s] some makeshift needles in the haystack of the state court record."   McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (citation omitted).

his constitutional right of confrontation of witnesses against him." (Doc. #16, Exh. A9, p. 10.)  The difficulty is that in addition to a Sixth Amendment right of confrontation guaranteed by the U.S. Constitution, the Florida Constitution also guarantees a right of confrontation.  FLA. CONST. art. I, § 16(a).  None of the cases cited in Petitioner's Initial Brief of Appellant (Doc. #16, Exh. A9, pp. 10-13) discuss the right to confront witnesses, under either the State or federal constitutions, and Petitioner's Table of Citations (Doc. #16, Exh. A9, pp. iii-iv) fails to cite any constitutional provision.  Petitioner's Reply Brief (Doc. #16, Exh. A11) similarly cites no constitutional provisions in its Table of Citations or in the body of the Reply (id. at pp. 1-5), and none of the cases cited rely upon any constitutional provision.  Simply referring to a "constitutional right of confrontation of witnesses" is not a sufficient reference to a federal claim any more that a reference to "ineffective assistance of . . . counsel" was sufficient in Baldwin v. Reese, 541 U.S. 27, 32-33 (2004).

The Court finds that this issue was not fairly presented to the Florida Supreme Court, and that Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice, which would excuse such lack of presentation.  Therefore, this issue is procedurally defaulted.

### (2) Alternative Merits Determination:

Assuming arguendo that Petitioner's reference to a constitutional right to confront witnesses was sufficient to

present a federal issue to the Florida Supreme Court, the Court will determine the merits of Petitioner's claim in the alternative. The Florida Supreme Court rejected Petitioner's claim that the trial court committed reversible error by allowing an undisclosed rebuttal witness to testify, in derogation of Florida Rule of Criminal Procedure 3.220.  Lucas, 376 So. 2d at 1151-52.  The Court found that Rule 3.220(a)(1)(i) required the prosecutor to disclose the names and addresses of persons known to have information relevant to the charged offense or any defense, including rebuttal witnesses who could be reasonably anticipated by the prosecutor. Id. at 1151.  The Court also found that the prosecutor had clearly failed to comply with Rule 3.220, but held that because such failure to comply did not require automatic reversal, "it was incumbent upon [Petitioner] to raise a timely objection and thereby allow the trial court to specifically rule on the issue."  Id. at 1151-2.  The Court held that because Petitioner's counsel merely brought the state's noncompliance to the court's attention and deferred to the court's statement, without officially asserting an objection, there was no timely objection and the trial court was not required to make further inquiry into the circumstances of the non-compliance.  Id.  The Florida Supreme Court did not specifically discuss the federal constitutional claim, but if Petitioner's Initial Brief of Appellant was to be deemed sufficient to fairly present the issue, then the Florida Supreme Court's decision would be deemed sufficient to constitute an adjudication

on the merits of the issue, denying that claim.  <u>Wright</u>, 278 F.3d at 1253-57 (giving deference to a two-sentence Florida District Court of Appeals decision in which the one sentence affirming convictions and life sentences did not refer to any issue, much less the relevant federal issue).

Denial of the federal constitutional claim was not contrary to or an unreasonable application of clearly-established federal law as determined by the United States Supreme Court.  Petitioner has failed to cite any U.S. Supreme Court holding setting forth a constitutional right to the disclosure of the prosecution's rebuttal witnesses.  The Supreme Court has held that "[t]here is no general constitutional right to discovery in a criminal case, . . ."  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977).  No cognizable constitutional claim is presented by allowing the testimony of a witness whose name did not appear on the State's witness list, where the Florida Supreme Court has found no error as a matter of state law and there was no contemporaneous objection by Petitioner.  <u>E.g.</u>, <u>McBride v. Sharpe</u>, 25 F.3d 962, 971-72 (11th Cir. 1994); <u>United States v. Chandler</u>, 996 F.2d 1073, 1098-99 (11th Cir. 1993); <u>Dillen v. Wainwright</u>, 449 F.2d 331, 332 (5th Cir. 1971).[3]  Even if this Court were to review the Florida Supreme Court's decision without granting it any deference, the Court would not find federal

_____

[3]In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

constitutional error.   No binding authority has recognized a
constitutional right to disclosure of the name of an anticipated
rebuttal witness by the prosecution.   Indeed, it is well-
established federal law that "[r]ebuttal witnesses are a recognized
exception to all witness disclosure requirements." United States
v. Windham, 489 F.2d 1389, 1392 (5th Cir. 1974).   Accordingly,
Ground I is dismissed as procedurally defaulted, or alternatively,
is denied on the merits.

**B.   Ground Two: Failure to Provide Court With Relevant Law**

Petitioner's second ground (and the second portion of the
first ground) alleges that trial counsel was ineffective in failing
to inform the trial judge of controlling case authority that
mandated an inquiry into the circumstances surrounding the State's
non-compliance with Florida Rule of Criminal Procedure 3.220, with
regards to a rebuttal witness (Doc. #1, pp. 11-13; Doc. #9, pp.
9-15).

Respondent argues that this claim was not exhausted in the
state courts.   (Doc. #14, p. 45.)   The Court agrees.   Petitioner
did not raise the issue of ineffective assistance of counsel in the
direct appeal of his conviction, but only raised the issue of trial
court error.[4]   (Doc. #16, Exh. A9, pp. 10-13.)   Although Petitioner

---

[4]Rather than raise the claim of ineffective assistance of
counsel, Petitioner provided justification in an attempt to
legitimize defense counsel's omissions, asserting that "defense
counsel did not pursue the matter further since by his ruling the
trial judge had announced that such a course would be fruitless.
(continued...)

presented the issue of ineffective assistance of counsel to the trial court in his Rule 3.850 Amended Motion to Vacate Judgments of Conviction and Sentences (Doc. #16, Exh. F1, p. 12, ¶e), Petitioner failed to present this issue to the Florida Supreme Court in his appeal of the trial court's denial of the Motion (Doc. #16, Exhs. F9, F11).  Therefore, this issue has not been properly exhausted in state court, Olge, 488 F.3d at 1368, and federal remedies are no longer available.  Smith, 256 F.3d at 1138; Snowden v. Singletary, 135 F.3d 732, 736 n.4 (11th Cir. 1998); Jones v. State, 591 So. 2d 911, 913 (Fla. 1991) ("A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions.").  Additionally, Petitioner has failed to establish the exception to the exhaustion requirement: that cause for the procedural default exists, that actual prejudice results from the procedural default, or that review is necessary to correct a fundamental miscarriage of justice resulting from failure to consider the forfeited claims.  Smith, 256 F.3d 1138-39 (citations omitted).  The Court finds that Petitioner has procedurally defaulted Ground Two, which is therefore dismissed.

---

[4](...continued)
Under [the Florida Supreme Court's] authority in Bailey v. State, 224 So. 2d 296 (Fla. 1969), however, this point [namely, the issue of trial court error] is properly preserved for appeal, just as if an objection had been properly made and a ruling entered thereon, because no attorney is required to pursue a completely useless course."  (Doc. #16, Exh. A9, pp. 11-12.)

**C.  Ground Three: Failure to Execute Petitioner Quickly Enough**

Ground III of the Petition alleges that the trial court erred in refusing to grant an evidentiary hearing for Petitioner to establish that the length of his incarceration on death row constituted cruel and unusual punishment, in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  (Doc. #1, pp. 13-14.) Petitioner's Memorandum argues this issue and two others:  (1) That Petitioner's length of incarceration on death row constitutes Cruel and Unusual Punishment in violation of the Eighth and Fourteenth Amendments; and (2) That Petitioner's execution is barred by the theory of laches.  (Doc. #9, pp. 16-21.)

**(1) Exhaustion and Procedural Default:**

Respondent does not raise any objection to the fact that one issue is raised in the Petition but three issues are argued in the Memorandum.  (See Doc. #14, pp. 26-27.)  Of these three issues, the only issue that Petitioner ever presented to the Florida Supreme Court concerned the lack of an evidentiary hearing.  (Doc. #16, Exh. F9, pp. 20-24).  Respondent addresses the merits of all three issues and affirmatively asserts that Ground III was exhausted by Petitioner (Doc. #14, pp. 26-27, 51-55) and that the Court should conduct a substantive review of Ground III (Doc. #14, p. 29.)

Respondent is not deemed to have waived the exhaustion requirement unless the State, through counsel, "expressly waives

the requirement." 28 U.S.C. § 2254(b)(3). A respondent's mere failure to identify in its briefs to the district court that an issue is procedurally defaulted does not necessarily constitute an express waiver. <u>McNair</u>, 416 F.3d at 1304-05. Here, however, Respondent affirmatively stated that Ground III had been exhausted and that the Court should review the substantive issues; therefore, Respondent has waived any requirement of exhaustion or claim of procedural default as to these issues. <u>Will v. Secretary for Dept. of Corr.</u>, 2008 WL 2067452 n.4 (11th Cir. 2008). To the extent the Court has the discretionary authority to *sua sponte* raise the exhaustion requirement, <u>e.g.</u>, <u>Day v. McDonough</u>, 547 U.S. 198 (2006), the Court finds no reason to do so in this case. Accordingly, the Court will address the merits of all three issues raised in Ground III.

**(2) Lack of Evidentiary Hearing:**

Petitioner argues that the trial court erred in refusing to grant an evidentiary hearing for Petitioner to establish that the length of his incarceration on death row constituted cruel and unusual punishment, in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. (Doc. #1, pp. 13-14.) The Florida Supreme Court held that the trial court did not err in denying Petitioner an evidentiary hearing as to whether his incarceration on death row constituted cruel and unusual punishment

because the claim was facially invalid.  <u>Lucas</u>, 841 So. 2d at 388-89.

Petitioner does not identify any U.S. Supreme Court authority supporting the recognition of a constitutional violation for failure to provide an evidentiary hearing.  Generally, an evidentiary hearing is required only if such a hearing could enable a petitioner to prove factual allegations which, if true, would entitle the petitioner to relief.  <u>Schriro v. Landrigan</u>, 127 S. Ct. 1933, 1940 (2007).  As discussed below, the length of Petitioner's incarceration on death row does not implicate a substantive constitutional violation and the facts proffered by Petitioner, even if proven to be true, would not entitle Petitioner to relief. The Florida Supreme Court's determination that no evidentiary hearing was warranted was not contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court.

**(3) Length of Incarceration on Death Row:**

Petitioner argues that the length of his incarceration on death row constitutes Cruel and Unusual Punishment, in violation of the Eighth and Fourteenth Amendments.  (Doc. #9, pp. 16-20.) Petitioner was first sentenced to death in February of 1977, and therefore has been under a death sentence intermittently for approximately thirty-one years.  Petitioner has cited no U.S. Supreme Court decision to support the notion that a death sentence is unconstitutional if not carried out in a timely manner.  The

Eleventh Circuit recently addressed this issue in a case where a petitioner had been on death row for thirty-one years, stating:

> Petitioner can identify no case in which the Supreme Court has held that prolonged confinement on death row violates a prisoner's constitutional rights. . . . Especially given the total absence of Supreme Court precedent that a prolonged stay on death row violates the Eighth Amendment guarantee against cruel and unusual punishment, we conclude that execution following a 31-year term of imprisonment is not in itself a constitutional violation."

Thompson v. Sec'y for the Dep't of Corr., 517 F.3d 1279, 1283-84 (11th Cir. 2008) (execution following a 31-year term of imprisonment is not violation of Eighth Amendment guarantee against cruel and unusual punishment.).  Accordingly, the Court concludes that the length of Petitioner's incarceration under a death sentence did not constitute Cruel and Unusual Punishment in violation of the Eighth and Fourteenth Amendments.

**(4) Laches:**

Petitioner argues that the equitable doctrine of laches bars the State of Florida from executing him.  (Doc. #9, pp. 20-21.) Petitioner has not cited any case law from any jurisdiction supporting this claim, much less U.S. Supreme Court authority. Generally laches requires a showing of: (1) a delay in asserting a right or claim, (2) that the delay was inexcusable, and (3) that undue prejudice resulted from the delay.  E.g., Citibank, N.A. v. Citibanc Group, Inc., 724 F.2d 1540, 1546 (11th Cir. 1984); United States v. Ajaegbu, 165 F.3d 24 (5th Cir. 1998).  The record in this case affirmatively demonstrates that Petitioner cannot establish at

least the first and second elements to support the invocation of laches.

## D. Ground Four: Ineffective Assistance at Trial, Petitioner's Drug Usage

Ground IV alleges ineffective assistance of counsel during the 1977 guilt phase of Petitioner's trial, based upon trial counsel's failure to adequately investigate the specific drug that Petitioner ingested prior to the murder and failure to present expert testimony concerning the drug's effect on Petitioner's ability to form the requisite intent and premeditation. (Doc. #1, pp. 15-16; Doc. #9, pp. 21-22.) It is undisputed (Doc. #14, p. 26, 55-56) that Petitioner exhausted this issue in the state courts by presenting the issue to the Florida Supreme Court in his Rule 3.850 post-conviction appeal (Doc. #16, Exh. F9, pp. 13-20).

As the Florida Supreme Court stated, Petitioner's "primary defense was that he was intoxicated at the time of the offense and was incapable of forming the premeditation required by statute." Lucas, 376 So. 2d at 1150. The Florida Supreme Court rejected Petitioner's claim that his 1977 trial counsel was constitutionally ineffective for failing to conclusively determine the specific drug that Petitioner ingested on the day of the murder, finding that Petitioner established neither of the Strickland prongs. Lucas, 841 So. 2d at 387-88. The Florida Supreme Court noted that while Petitioner's 1977 trial counsel did not determine conclusively

whether Petitioner had ingested PCP or THC, it was not because of a lack of investigation:

> During counsel's investigation, he interviewed numerous people, including associates of Lucas and Lucas himself. No one, including Lucas, could say with any certainty the particular drug Lucas consumed that day.   Lucas, on different   occasions,   told   his   counsel,   counsel's investigator,   and   the   court-appointed   mental   health expert that he had taken THC.   On another occasion, he informed his counsel's investigator that he had taken PCP.     Defense   counsel's   investigator   interviewed   an associate of Lucas who had taken drugs with Lucas on the day of the crime.   The witness informed the investigator that they had taken THC. . . .

Lucas, 841 So. 2d at 388.   The Florida Supreme Court found that Petitioner's 1977 trial counsel testified at the Rule 3.850 hearing "[T]hat he did not present an intoxication defense; rather he attempted to demonstrate that Lucas could not have formed the necessary premeditation as a result of his alcohol and drug use on the day of the crime.   He explained that he did not think it was necessary to determine exactly what drug Lucas had taken, because it was clear he had consumed an excessive quantity of alcohol and had smoked several marijuana cigarettes."   Lucas, 841 So. 2d at 388.  The Florida Supreme Court found that "[t]he record shows that he [1977 trial counsel] presented evidence of Lucas's alcohol consumption and marijuana use that day."   Id.   The Florida Supreme Court concluded that "[i]t is clear that Lucas's 1977 trial counsel provided reasonably competent performance in his defense of Lucas, and thus the first prong of the Strickland test is also not satisfied.   Further, because Lucas suffered no prejudice as a

result of the performance of his 1977 trial counsel, the second prong of Strickland is likewise not satisfied." Id.

The Florida Supreme Court thus correctly recognized the proper legal standard of review, i.e., the Strickland standard. Counsel had a duty to conduct a reasonable investigation before making a strategic decision, Wiggins v. Smith, 539 U.S. 510, 521-23 (2003); Williams v. Taylor, 529 U.S. 362, 395-96 (2000), and the Florida Supreme Court's decision was not contrary to this clearly established federal law. Counsel conducted an objectively reasonable investigation into the issue of Petitioner's inability to premeditate because of alcohol and drug use, as summarized by the Florida Supreme Court. Counsel's decision to accept the statements of his own client and witnesses that the drug in question was THC, and his decision not to pursue available scientific technology to establish that the identity of the drug was actually PCP, were well within the range of professionally reasonable judgment given the nature of the defense and the other available evidence introduced. "[C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." Adams v. Balkcom, 688 F.2d 734, 740 (11th Cir. 1982) (citing Lovett v. Florida, 627 F.2d 706, 708 (5th Cir. 1980)). Counsel complied with his duty to make reasonable investigations and to make a reasonable decision that made further investigation unnecessary. The Court finds that the Florida

Supreme Court's decision was not an unreasonable application of
<u>Strickland</u>.

Additionally, the Court finds that the Florida Supreme Court
decision did not involve an unreasonable determination of the
facts.  The records at trial and at the Rule 3.850 evidentiary
hearing fully support its factual findings.  Other than personal
disagreement with the factual findings, Petitioner advances no
legitimate reason to question their validity.

Thus, the Court determines that the Florida Supreme Court's
determination, that Petitioner's 1977 trial counsel's conduct was
not ineffective or prejudicial, was not contrary to or an
unreasonable application of <u>Strickland</u>, nor was it an unreasonable
application of the facts in light of the evidence presented at
trial.  Therefore, relief based on Ground Four is denied.

## E.  Ground Five: Ineffective Assistance of Counsel at 1987 Penalty Phase, Petitioner's Drug Usage

Ground V alleges ineffective assistance of counsel during the
1987 penalty phase based upon counsel's failure to investigate the
specific drug that Petitioner ingested prior to the murder and to
present expert testimony concerning the drug's effect on
Petitioner's ability to form the requisite intent and premeditation
to sustain a conviction of First Degree Murder.  (Doc. #1, pp.
16-17; Doc. #9, pp. 21-22).

**(1) Exhaustion and Procedural Default:**

Respondent asserts that Ground V was not exhausted and is procedurally defaulted because it was not presented to any state court.  Specifically, Respondent asserts that "[a]lthough Lucas litigated a claim of ineffective assistance of counsel in his state postconviction proceedings, he has never asserted that counsel failed to investigate the nature of Lucas's drug use.  Rather, in state court, Lucas acknowledged that counsel had determined that Lucas had ingested PCP prior to the murder, but alleged that counsel did not adequately investigate the effect this drug use had on Lucas's mental abilities."   (Doc. #14, pp. 31, 66-67.) Petitioner asserts that he raised the issue in his Rule 3.850 motion and appealed the issue to the Florida Supreme Court.  (Doc. #1, p. 17.)

The Court finds that Petitioner has exhausted both aspects of this ineffective assistance of counsel claim.  In Petitioner's Initial Brief of the Appellant, Petitioner argued that "trial counsel was ineffective in failing to determine what drugs Mr. Lucas was under and the affect of those drugs, specifically PCP or angel dust" (Doc. #16, Exh. F9, p. 18); that "trial counsel  was ineffective in 1977 for failing to determine and confirm the ingestion of PCP by Mr. Lucas" and that this rendered counsel and his expert in the 1987 resentencing "limited as to the certainty that could have been possible regarding the usage of this drug" (Id. at p. 20); and that this satisfied the prejudice test of

-51-

<u>Strickland</u>.   (<u>Id.</u>)   The Court finds that this was sufficient to fairly present the issues to the state courts.

   **(2) Merits:**

   Ground V alleges ineffective assistance of counsel during the 1987 penalty phase based upon counsel's (1) failure to investigate the specific drug that Petitioner ingested prior to the murder, and (2) failure to present expert testimony concerning the drug's effect on Petitioner's ability to form the requisite intent and premeditation.

   The Florida Supreme Court found that Petitioner's argument, that the ineffectiveness of his 1977 trial counsel carried over to his 1987 resentencing hearing, lacked merit. <u>Lucas</u>, 841 So. 2d at 387-388.   The Florida Supreme Court found that "[b]ecause the record clearly reflects Lucas did not suffer any prejudice in his 1987 resentencing, and in fact evidence regarding his use of drugs was introduced, it is unnecessary to consider the first prong of the <u>Strickland</u> test.  Lucas's claim fails under the second prong." <u>Lucas</u>, 841 So. 2d at 387.   The Florida Supreme Court further found that it was "clear Lucas was not procedurally barred from introducing specific drug evidence during his 1987 resentencing as a result of specific drug evidence not being produced in his 1977 trial."   <u>Id.</u>   The Florida Supreme Court also found that

> [t]he record on appeal shows that at the time of Lucas's resentencing in 1987, Lucas and his counsel had clearly determined that Lucas had taken PCP on the day of the crime.  Evidence showing that Lucas had ingested PCP was presented to the jury.  Further, Lucas's counsel during

his 1987 resentencing, Robert Jacobs, testified during the 3.850 evidentiary hearing that he tried to show the effects of PCP for mitigation purposes.  The record supports this; during the resentencing, evidence regarding the effects of PCP was presented.  Clearly, the fact that Lucas's 1977 trial counsel did not determine conclusively that Lucas had taken PCP on the day of the crime had no effect on the presentation of drug evidence during his 1987 resentencing.

Lucas, 841 So. 2d at 388.

The Florida Supreme Court thus correctly recognized the proper legal standard, i.e., the Strickland standard.  The Florida Supreme Court's decision was not contrary to, or an unreasonable application of, this clearly established federal law.  The Florida Supreme Court decision did not involve an unreasonable determination of the facts, as the record of the Rule 3.850 evidentiary hearing fully supports its factual findings that counsel at the resentencing hearing had determined the drug taken was PCP and did present evidence as to the effects of PCP for mitigation purposes.

Thus, the Court determines that the Florida Supreme Court's determinations, that the conduct of Petitioner's 1977 trial counsel did not render counsel for the 1987 resentencing ineffective, and that counsel at the 1987 resentencing was not ineffective or prejudicial, were not contrary to or an unreasonable application of Strickland, nor was the Florida Supreme Court's decision an unreasonable application of the facts in light of the evidence presented at the resentencing.  Therefore, relief as to Ground Five is denied.

**F.   Ground Six: Aggravating Factor of Heinous, Atrocious, and Cruel**

Ground VI alleges the following two grounds: (1) That the trial court based its finding of the aggravating factor of Heinous, Atrocious, and Cruel (HAC) on nonexistent evidence, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights to due process and a fair trial; and (2) That trial counsel should have negated the HAC aggravator by showing that there could not have been a beating inside the house.  (Doc. #1, pp.17-19; Doc. #9, pp. 22-24.)

**(1) Exhaustion and Procedural Default: Insufficient Evidence to Support HAC**

Respondent asserts that the first issue has not been exhausted because it was presented to the state courts as a state law issue and was never fairly presented as a federal constitutional issue. (Doc. #14, pp. 69-70.)  Petitioner asserts that he exhausted this issue by raising it in his Rule 3.850 motion and appealing the issue to the Florida Supreme Court.  (Doc. #1, p. 18.)[5]

In the Initial Brief of Appellant, Petitioner raised two issues related to ineffective assistance of counsel and one issue related to the failure to grant an evidentiary hearing regarding the length of the incarceration on death row.  (Doc. #16, Exh. F9.)

_____

[5]Petitioner did challenge the HAC aggravating factor in two direct appeals (Doc. #16, Exh. A9, pp. 20-25; D10, pp. 34-43). These appeals, however, argued that the murder did not fit the definition of HAC under the state law of Florida, not that the finding of HAC was based on nonexistent evidence.

As it related to the ineffective assistance of counsel issue, Petitioner asserted that the trial court's finding of HAC was not supported by any evidence and that trial counsel should have shown that there could not have been a beating inside the house, thereby negating the HAC aggravator.  (Doc. #16, Exh. F9, pp. 16-18.) Nothing in the Initial Brief of Appellant raised any federal constitutional issue regarding the sufficiency of the evidence as a freestanding issue; rather, the argument was only presented as a matter of state law as a predicate for the claimed ineffective assistance of counsel issue.  Petitioner's Reply Brief of Appellant (Doc. #16, Exh. F11) also failed to address this issue at all.

The Court concludes that the issue of insufficiency of the evidence, as an independent federal constitutional issue, was not fairly presented to the Florida Supreme Court and therefore, the issue has not been exhausted.  Petitioner has shown neither cause and prejudice nor a fundamental miscarriage of justice pursuant to Strickland, and the issue is no longer capable of being considered by the Florida courts.  Therefore, the first issue is procedurally defaulted.

**(2) Ineffective Assistance of Counsel: No Beating in House, Failure to Negate HAC**

Petitioner also argues that trial counsel provided ineffective assistance because counsel should have sought to negate the HAC aggravator by showing that there could not have been a beating

inside the house.  Respondent concedes that this issue has been properly exhausted.  (Doc. #14, pp. 30-31, 69.)

The Florida Supreme Court rejected Petitioner's claim.  Lucas, 841 So. 2d at 385-87.  The Florida Supreme Court recognized that during the Rule 3.850 evidentiary hearing, Petitioner called two experts to show that the victim had not been beaten during the crime, but noted that each of their testimonies included facts supporting a contrary view.  The medical examiner who performed the original autopsy testified that there was no evidence to suggest that the victim suffered any kind of beating, but also testified that she had cuts on her hands and arms that were characteristic of defensive wounds, as if she had been fending off an attack by a knife or a sharp instrument.  Lucas, 841 So. 2d at 386.  Petitioner's forensic consultant testified that, based on his study of the crime scene photographs, the evidence does not show that a beating occurred inside the home; however, he also testified that the evidence did not contradict the State's assertion that the victim was shot several times outside the residence, was then inside the home, screaming, and eventually suffered the fatal gunshot wound to the head outside the home.  Id.  The Florida Supreme Court then determined that Petitioner's attorney had not provided ineffective assistance in the 1987 resentencing:

> It is clear that the additional evidence presented during the evidentiary hearing would not have affected the original 1987 ruling as to the existence of the HAC aggravator. The sentencing judge based his ruling on the totality of the circumstances, which included evidence

that Piper was shot numerous times in the back and the head, was pursued into her home, and suffered defensive wounds.  As this Court stated in Lucas's first direct appeal . . . "The evidence shows (at least by one witness's version) that appellant shot the victim, pursued her into the house, struggled with her, hit her, dragged her from the house, and finally shot her to death while she begged for her life." <u>Lucas I</u>, 376 So. 2d at 1153.

Lucas has not provided any conclusive, uncontroverted evidence that could have been presented in 1987 to dispel the findings of fact relied upon by the 1987 sentencing court, and this Court, to support the HAC aggravator. Lucas's 1987 counsel, Robert Jacobs, testified during the evidentiary hearing that he attempted to argue that the HAC aggravator was not present based upon the fact that all six shell casings were found outside the home, that the only evidence that placed Piper inside the home was the testimony of one of the other victims, and that the medical examiner testified that the gunshot wound to the head had produced instantaneous death and that would could have been the first inflicted.  Further, the record from the 1987 sentencing proceeding shows that Jacobs fully challenged the evidence relating to the HAC aggravator.  The finding of HAC was proper under the evidence, and the additional evidence asserted during the postconviction evidentiary hearing would not have altered that finding.  Lucas's counsel was not ineffective in his representation in the 1987 resentencing.

<u>Lucas</u>, 841 So. 2d at 386-87.

The Florida Supreme Court correctly recognized the proper ineffective assistance legal standard, i.e., the <u>Strickland</u> standard.  The Florida Supreme Court's decision was not contrary to, or an unreasonable application of, this clearly established federal law.  The Florida Supreme Court's decision did not involve an unreasonable determination of the facts, as the record of the Rule 3.850 evidentiary hearing fully supports its factual findings. The new evidence presented was simply not as conclusive as Petitioner asserts, and the Florida Supreme Court correctly

concluded it would not have affected the trial court's decision on the HAC aggravator.

Thus, the Court finds that the Florida Supreme Court's determination, that counsel's representation at the 1987 resentencing was not ineffective or prejudicial, was not contrary to, or an unreasonable application of, <u>Strickland</u>, nor was it an unreasonable application of the facts in light of the evidence presented at trial and during the 1987 resentencing. Relief as to this portion of Ground Six will be denied.

## G. **Ground Seven: Violent Prior Felony Conviction as Aggravating Factor**

Ground VII asserts that Petitioner's due process rights under the Fourteenth Amendment were violated when the trial court found, as an aggravating circumstance, that Petitioner had previously been convicted of a felony involving the use or the threat of violence to a person, by virtue of Petitioner's convictions for the contemporaneous attempted murders of Terri Rice and Richard Byrd, Jr. (Doc. #1, pp. 19-20). Petitioner did not discuss this issue in his Memorandum. (<u>See</u> Doc. #9, pp. 24-26.)

Respondent asserts that this issue has not been exhausted because it was not raised on direct appeal; while the issue was raised before the trial court in the Rule 3.850 motion, it was then found to be procedurally defaulted by the trial court and excluded from Petitioner's appeal of that order to the Florida Supreme Court. (Doc. #14, pp. 31, 80.) Petitioner responds that this

issue was presented to the Florida Supreme Court in his fifth
direct appeal, was presented to the trial court in the Rule 3.850
motion, and was not found by the trial court to be procedurally
defaulted (Doc. #17, pp. 4-5 (citing Doc. #16, Exh. D10, pp.
69-75); Doc. #16, Exh. F1, pp. 26-27.)

A review of Petitioner's fifth direct appeal shows that
Petitioner only briefly referenced the trial court's finding of HAC
based upon the prior conviction of a violent felony. In doing so,
Petitioner stated that such a finding was "not entitled to great
weight," as opposed to Petitioner's current position that the
finding was in violation of Petitioner's due process rights (Doc.
#16, Exh. C8, pp. 67, 69). Furthermore, Petitioner argued
primarily that his case fell within a line of cases where the
Florida Supreme Court reversed death sentences because the murders
occurred as a result of a domestic dispute or lovers' quarrel. The
Court finds that this did not fairly present the federal
constitutional issue to the Supreme Court of Florida.

Petitioner did raise this issue before the state trial court
in his Rule 3.850 Amended Motion to Vacate Judgments of Conviction
and Sentences. (Doc. #16, Exh. F1, pp. 26-27.) The trial court
found as follows: "The law in Florida is legion in support of this
[prior felony conviction involving the use of or threat of violence
to a person] as a valid aggravating circumstance in cases such as
Mr. Lucas's. In addition, this is a matter which could have been
and indeed was raised on direct appeal. Accordingly, it is without

merit.  Based upon the foregoing Claim IV is DENIED."  (Doc. #16, Exh. F7, p. 902.)  The Court need not resolve the dispute between the parties as to whether this meant that the issue was found to be procedurally defaulted.  In his appeal of the Rule 3.850 decision, Petitioner failed to raise both the substantive issue of the prior violent felony conviction and the determination of procedural default by the trial court.  (Doc. #16, Exh. F9.)  Therefore, Petitioner has failed to fairly present the issue to the Florida Supreme Court, and the claim is procedurally defaulted because Petitioner has failed to establish cause and prejudice or a fundamental miscarriage of justice.

## H.  Ground Eight: Non-Statutory Aggravating Evidence

Ground VIII contains three claims: (1) That the trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights by allowing the following non-statutory aggravating evidence to be introduced during the 1977 sentencing and subsequent resentencings: (a) Testimony from Richard Byrd, Jr. that he realized he was in danger of being killed (no objection made) (Doc. #16, Exh. C3, pp. 419-20); (b) Testimony from Richard Byrd, Jr. that he thought his intestines were falling out (no objection made) (Id. at pp. 434-35); (c) The prosecutor's argument to the Court for the jury to consider if Petitioner showed mercy to the victim (no objection made) (Doc. #16, Exh. C4, pp. 728, 744); (d) Testimony of Terri Rice in which she said the victim appeared scared after Petitioner's statement (objection made) (Doc. #16, Exh. C2, p.

268); (e) Deputy McDougall's gruesome, exaggerated description of injuries sustained by Richard Byrd, Jr. (no objection made) (Doc. #16, Exh. C2, p. 324); (f) Testimony from Richard Byrd, Jr. in which he said the victim and Terri Rice repeatedly suggested they were scared for their lives (no objection made) (Doc. #16, Exh. C3, p. 415); (g) Testimony from Terri Rice that she had never been as scared in her life as she was during the shootings (no objection made) (Id. at p. 423); (h) Testimony about what Petitioner did after shooting the victim, because the Florida Supreme Court ruled that the heinous, cruel, and atrocious nature of the attempted murders should not be considered as aggravating circumstances (objection made) (Id. at p. 426); (i) Testimony of Eleanor Piper, the victim's mother, concerning the events of the romantic breakup between Petitioner and Jill Piper, as well as the alleged break-in of her house (no objection made in response to the testimony of the romantic breakup (Id. at p. 480), objection and motion for mistrial made in response to testimony of the alleged break-in (Id. at pp. 481-83)); and (j) The post-sentence investigation considered by the trial court, in which the family of the victim indicated that the death penalty should be imposed, Ms. Rice complained of letters from Petitioner and hospital bills and that she couldn't stand for him to be paroled, Judge Shands stated that he thought Petitioner would be killed in 48 hours if ever released, and the state attorney opined that the community would like to lynch Petitioner because of his appeals; such statements propagated the myth of the

severity of Mr. Byrd's injuries, including the large gaping hole and protruding intestines; (2) That trial counsel during the guilt phase was ineffective for failing to obtain the medical records of Richard Byrd, Jr. to verify that he was not seriously injured; and (3) That trial counsel during the guilt phase was ineffective by failing to make appropriate objections to the specific statements indicated in Issue 1 of Ground Eight (Doc #1, pp. 20-23; Doc. #9, pp. 24-26).

**(1) Exhaustion and Procedural Default:**

Respondent argues that these claims were not exhausted in state court because Petitioner never raised these issues in his appeal of the denial of the Rule 3.850 motion.  (Doc. #14, p. 82.)

**(a) Claims (1)(a)-(i):**

In his Reply, Petitioner admits that the statements and evidence referenced in Claims (1)(a) through (i) above were not exhausted in the state courts (Doc. #17, p. 5).  The Court agrees with the parties that the issues pertaining to parts (1)(a) through (i) were not exhausted in the state courts.  The Court further finds that Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice, and that issues (1)(a)-(i) are procedurally defaulted.

**(b) Claim (1)(j):**

Petitioner argues in his Reply that the post-sentence investigation referenced in part (j) of Issue 1 was presented to

the Supreme Court of Florida on Petitioner's fifth direct appeal, by virtue of Petitioner's argument relating to victim impact statements (Doc. #17, pp. 5-6.)   In his fifth direct appeal, Petitioner argued that statements made by Terri Rice, the victim's parents, the state attorney, and the original trial judge (Judge Shands) should not be considered in the post-sentence investigation as they constituted improper victim impact statements.   Petitioner further argued that consideration of these statements would be in violation of the Eighth and Fourteenth Amendments, as stated by the United States Supreme Court in Booth v. Maryland, 482 U.S. 496 (1987).   (Doc. #16, Exh. D10, pp. 29-33.)   Accordingly, the Court finds that this aspect of Claim (1)(j) was properly exhausted in the state courts.

In the Reply Petitioner also argues that Claim (1)(j), as it relates to non-statutory aggravating circumstances, was presented in his Amended Rule 3.850 motion but was only partially addressed by the trial judge, who did not address his claim that the "judge who sentenced Mr. Lucas, at both the original sentencing and re-sentencing, [was] presented with and considered non-statutory aggravating evidence," in error.   (Doc. #17, p. 6.)   Petitioner further argues that since this claim had been raised on direct appeal, it has been properly exhausted.   (Id.)

In his Amended Rule 3.850 motion, Petitioner asserted that his Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court admitted this nonstatutory aggravating evidence and

the state argued that such evidence supported the death sentence. (Doc. #16, Exh. F1, pp. 27-29.)  Petitioner's Initial Brief of the Appellant to the Florida Supreme Court (Doc. #16, Exh. F9) and Reply Brief of the Appellant (Doc. #16, Exh. F11), however, fail to raise this as an issue on appeal.  While Petitioner asserts that the issue was raised on direct appeal (Doc. #17, p. 6), he provides no record citation for such an assertion, and the Court has determined that the issue was, in fact, not raised on direct appeal.  In his fifth direct appeal, Petitioner raised the issue in terms of victim impact statements, (Doc. #16, Exh. D10, pp. 29-33), but did not argue that this evidence constituted non-statutory aggravating factors violating Petitioner's constitutional rights.[6] Therefore, the Court finds this portion of Claim (1)(j) to be unexhausted.  The Court further finds that Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice, and that this portion of issue (1)(j) is procedurally defaulted.

**(c) Claim 2:**

Claim 2 of Ground Eight alleges that trial counsel was ineffective for not obtaining the medical records of Richard Byrd, Jr.  This issue was not exhausted because, while Petitioner presented it to the trial court in his Rule 3.850 Motion (Doc. #16,

---

[6]In <u>Windom v. State</u>, 656 So. 2d 432, 438 (Fla. 1995), the Florida Supreme Court rejected the argument that the victim impact evidence procedure outlined in FLA. STAT. § 921.141(7), enacted in 1992, constituted an impermissible non-statutory aggravator that should be excluded during the sentencing phase of a capital case.

Exh. F1, pp. 27-29), he failed to appeal the issue to the Supreme Court of Florida (Doc. #16, Exh. F9).  Petitioner has failed to show cause and actual prejudice or a fundamental miscarriage of justice, and therefore the issue is procedurally defaulted.

**(d) Claim 3:**

Claim 3 of Ground Eight alleges that trial counsel was ineffective for not making objections to the testimony in (i) through (j) above.  This issue was not exhausted because while Petitioner presented it to the trial court in his Rule 3.850 Motion (Doc. #16, Exh. F1, pp. 27-29), he failed to appeal the issue to the Supreme Court of Florida (Doc. #16, Exh. F9).  The fifth direct appeal did not raise the issue within the context of ineffective assistance of counsel.  (Doc. #16, Exhs. D10, D13.)  Petitioner has failed to show cause and actual prejudice or a fundamental miscarriage of justice, and therefore the issue is procedurally defaulted.

**(2) Improper Victim Impact Statements:**

The only claim that Petitioner has properly exhausted is that statements made by Terri Rice, the victim's parents, the state attorney, and the original trial judge should not be considered in the post-sentence investigation because they constituted improper victim impact statements, the consideration of which was in violation of the Eighth and Fourteenth Amendments under Booth v. Maryland, 482 U.S. 496 (1987).

At the resentencing hearing before Judge Reese on May 14, 1991, defense counsel asked that certain statements contained in a post-sentence investigation be excluded from consideration because they were improper victim impact statements under Booth. (Doc. #16, Exh. D1, p. 59.) These statements included: (1) Statements by Terri Rice, one of the attempted murder victims, that she could not stand for Petitioner ever to be released on parole, that she was very much afraid of him, that if he were released and allowed to return she would fear for her life, that Petitioner sends her letters, which she wanted stopped; and that she has hospital bills which she is completely unable to pay; (2) A statement by the murder victim's father that "I believe he should be executed.  No other sentence is appropriate."  (3) A statement by the original trial judge (Judge Shands) that he thought Petitioner would be killed within 48 hours if he were released on parole; that no man like Petitioner should ever be released to the community because he is dangerous; that he did not think Petitioner would adjust to supervision; and that the murder victim's parents are hot-tempered and might kill Petitioner; (4) A statement by the State Attorney that he did not think Petitioner could adjust to parole, that the community will not accept him, that they would like to lynch him, and that they have been up in arms about his appeal.  (Doc. #16, Exh. D10, pp. 29-31.)

The Florida Supreme Court held that the testimony of the two surviving victims at the resentencing proceeding "was not the type

of victim impact evidence prohibited by <u>Booth</u> . . ." <u>Lucas</u>, 568 So. 2d at 21.

In <u>Booth</u>, the U.S. Supreme Court held that the Eighth Amendment prohibited <u>a</u> <u>jury</u> from considering a victim impact statement at the sentencing phase of a capital trial except to the extent it related directly to the circumstances of the crime. <u>Id.</u> at 507. This was extended in <u>South Carolina v. Gathers</u>, 490 U.S. 805 (1989), to statements made by a prosecutor to the sentencing jury regarding the personal qualities of the victim. These parts of <u>Booth</u> and <u>Gathers</u> were overruled in part by <u>Payne v. Tennessee</u>, 501 U.S. 808, 827 (1991), which held "that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar." <u>Booth</u>, however, also held that the admission to a jury of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence, violated the Eighth Amendment; this remains good law. <u>United States v. Brown</u>, 441 F.3d 1330, 1351 (11th Cir. 2006).

None of the evidence Petitioner now complains of was presented to the jury during the 1987 resentencing proceedings. (Doc. #16, Exhs. C2, C3, C4.) While Terri Rice and Richard Byrd, Jr. testified before the jury, they did not testify as to any of the statements summarized above. (Doc. #16, Exh. C2, pp. 259-289; Exh. C3, pp. 408-449.) Additionally, the prosecutor did not mention or argue any of these matters to the jury. (Doc. #16, Exh. C4, pp.

-67-

725-765.)   Further, nothing in the judge's sentencing order
indicates that he gave any weight to any of these matters.  (Doc.
#16, Exh. C6, pp. 889-892.)  Therefore, this claim is denied.

## I.  Ground Nine: Valid Aggravating Factors

Ground IX alleges that there are no constitutionally
sustainable aggravating factors to support Petitioner's death
sentence, and that the sentence therefore violates his Sixth,
Eighth, and Fourteenth Amendment rights (Doc #1, pp. 23-24; Doc #9,
pp. 26-27).  Read liberally, Petitioner argues the following three
claims in Ground Nine: (1) The Florida Supreme Court conducted a
constitutionally deficient harmless error analysis in Lucas IV, 568
So. 2d 18; (2) There is no aggravating evidence to balance against
the mitigating evidence; and (3) The aggravating evidence was
unreliable because counsel failed to investigate the autopsy of the
victim and failed to procure the medical records of Richard Byrd,
Jr. and Terri Rice.

Respondent argues that the claims in Ground IX were not
exhausted in state court.  (Doc. #14, pp. 31, 84.)  The Court
agrees.  Petitioner presented these arguments to the trial court in
his Rule 3.850 Motion (Doc. #16, Exh. F1, pp. 29-31), but failed to
present the issues to the Florida Supreme Court following the trial
court's denial of the motion (Doc. #16, Exh. F9).  Petitioner has
failed to show cause and actual prejudice, and has not established
that review is necessary to correct a fundamental miscarriage of

justice.    Therefore,   the   Court   finds   that   Petitioner   has procedurally defaulted this ground.

Additionally, the issue of constitutionality as to the Florida Supreme Court's harmless error analysis is moot because the Supreme Court nonetheless vacated Petitioner's death sentence and remanded to  the  trial  court  for  "reconsideration  and  rewriting  of  the findings of fact."  Lucas, 568 So. 2d at 24.  The operative death sentence order  was  imposed  thereafter.   (Doc. #16, Exh. D7, pp. 965-982.)

## J.  **Ground Ten: Conflicts of Interest, Bias, Improper Actions**

Ground X asserts that Petitioner's conviction and sentences are  unreliable  and  violate  the  Sixth,  Eighth,  and  Fourteenth Amendments because of judicial and representational conflicts of interest,  bias,  and  improper  action  by  the  State  (Doc #1, pp. 25-26; Doc #9, p. 28).   Specifically, Petitioner asserts the following five claims: (1) The trial court violated Petitioner's right  to  a  fair  trial  during  the  guilt  phase  by  forbidding  the testimony of one of his witnesses, after she was confronted by the victim's mother; (2) Trial counsel was ineffective for failing to object  to  the  judge's  decision  to  forbid  the  witness  from testifying; (3) Judge Shands was biased against Petitioner during the guilt phase of the trial because Judge Shands knew the victim's family, but failed to advise Petitioner of this fact or to recuse himself; (4) During  the  guilt  phase  of  the  trial,  counsel  was ineffective to the extent that counsel may have been aware of the

judge's bias but failed to move to recuse the judge; and (5) Defense counsel failed to disclose a conflict of interest based upon counsel's representation of Petitioner's brother (or a co-defendant of Petitioner's brother) on murder charges.

Respondent argues that these issues were not exhausted in the state courts.   (Doc. #14, pp. 31, 87.)   The Court agrees. Petitioner presented these arguments to the trial court in his Rule 3.850 Motion (Doc. #16, Exh. F1, pp. 31-32), but he failed to present these issues to the Supreme Court of Florida on appeal of the trial court's denial of the motion (Doc. #16, Exh. F9). Petitioner has failed to show cause and actual prejudice, and has not established that review is necessary to correct a fundamental miscarriage of justice.  Therefore, the Court finds that Petitioner has procedurally defaulted this ground.

**K.  Ground Eleven: Improper Voir Dire and Closing Argument**

Ground XI asserts that the jury's sentencing recommendation was tainted by the prosecutor's improper voir dire and closing argument, which misled the jury in its consideration of mitigating evidence, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights (Doc. #1, pp. 26-28; Doc. #9, pp. 29-31).  In particular, Petitioner argues that (1) During voir dire, the prosecutor was improperly permitted to inquire whether jurors believed that someone who was intoxicated on alcohol or high on drugs should be held accountable for his actions; (2) In closing argument, the prosecutor incorrectly argued that the statutory

mental capacity mitigators did not apply to Petitioner because he knew right from wrong; and (3) In closing argument the prosecutor incorrectly argued that the mitigating circumstance, of lack of significant history of prior criminal activity, did not apply because Petitioner had been convicted of the contemporaneous attempted murders of Terri Rice and Richard Byrd, Jr.   It is undisputed (Doc. #14, p. 91) that Petitioner exhausted these issues in the state courts by presenting them to the Florida Supreme Court in his fourth direct appeal (Doc. #16, Exh. C8, pp. 31-34).

**(1) Prosecutor's Voir Dire:**

Petitioner argues that the prosecutor's voir dire "suggested that the jurors would not be holding Petitioner accountable for his actions if they returned a life recommendation, and so was improper." (Doc. #9, p. 29.)   The Florida Supreme Court stated: "During voir dire, the prosecutor asked prospective jurors whether they believed an intoxicated person should be held accountable.  We do not see how these questions could have misled the jury into believing that alcohol and drug use could not be considered in mitigation.   The court properly instructed the jury on the consideration of mitigating evidence, and we find no error here." Lucas, 568 So. 2d at 20.

A properly-conducted voir dire can "inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions . . . both unnecessary and unwise," and "provides a means of discovering actual or implied bias and a firmer basis upon which

the parties may exercise their peremptory challenges intelligently." <u>J.E.B. v. Alabama ex rel. T.B.</u>, 511 U.S. 127, 143-44 (1994). A criminal defendant has the "right to an impartial jury drawn from a venire that has not been tilted in favor of capital punishment . . . ." <u>Uttecht v. Brown</u>, 127 S. Ct. 2218, 2224 (2007). The Court finds that there was no error in the voir dire examination in this case, much less error of constitutional magnitude. The Court does not find that the prosecution's voir dire questions made the suggestion that Petitioner asserts, and as the Florida Supreme Court noted, the trial court properly instructed the jury. Accordingly, the Court finds that the Florida Supreme Court decision was not contrary to, or an unreasonable application of federal constitutional law, nor was it an unreasonable application of the facts.

**(2) Prosecutor's Closing Argument, Mitigating Evidence**

Petitioner argues that the prosecutor's closing argument was improper because it contained misstatements of law concerning mitigating evidence. The prosecutor stated that while a mitigating circumstance can be that Petitioner had no significant history of prior criminal activity, he argued: "How much more significant can two attempted murders be as prior criminal history? That is significant. He attempted to kill two other people and he was convicted of that." (Doc. #16, Exh. C4, p. 744.) Petitioner asserts that while the argument may not have been improper under Florida law at the time of the closing argument, a subsequent

decision, <u>Scull v. State</u>, 533 So. 2d 1137 (Fla. 1988), renders the argument improper and must be applied retroactively pursuant to <u>Wheeler v. State</u>, 344 So. 2d 244, 245 (Fla. 1977).

The Florida Supreme Court held that while under <u>Scull</u> the argument was no longer available, it was an argument that could be asserted at the time of Petitioner's 1987 resentencing. <u>Lucas</u> 568 So. 2d at 21. Because Petitioner did not object to the argument and because the Florida Supreme Court found it did not constitute fundamental error, it held that the issue had not been preserved for appeal. <u>Lucas</u>, 568 So. 2d at 21.

Respondent argues that the Florida Supreme Court's finding of a procedural bar constitutes an independent state basis for denying relief without federal consideration of the merits. (Doc. #14, p. 92.) The Court agrees.

A federal court "will not take up a question of federal law presented in a case 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)). "Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule." <u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 85-86 (1977)). "To determine whether a state procedural bar constitutes an independent and

adequate state rule of decision, the last state court rendering judgment must clearly and expressly state that it is relying on a state procedural rule to resolve the federal claim, must not decide the claim on the merits, and must base its decision entirely on an 'adequate' state procedural rule." Lynd v. Terry, 470 F.3d 1308, 1313 n.4 (11th Cir. 2006) (citing Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).

All three elements are satisfied here.  The last state court rendering judgment, the Florida Supreme Court, clearly and expressly stated that it is relying on the state procedural rule, which barred consideration of a claim where there had been no objection in the trial court. Lucas, 568 So. 2d at 21.  The Florida Supreme Court did not decide the claim on the merits. Id. Instead, the Florida Supreme Court's decision was based entirely on an adequate state procedural rule that it regularly follows. See e.g., Wyatt v. State, 641 So. 2d 355, 358-59 (Fla. 1994) (refusing to lift procedural bar where defense attorney failed to object to closing argument which did not amount to fundamental error); Wuornos v. State, 676 So. 2d 972, 974 (Fla. 1996) (failing to excuse the failure to object to a jury instruction in death penalty phase where the recommendation was seven-to-five).  Petitioner did not argue against the procedural bar in his Reply (Doc. #17), and has not otherwise indicated that the procedural bar is not applicable. Additionally, Petitioner has failed to establish cause

and prejudice or a fundament miscarriage of justice, and therefore this issue is procedurally barred.

Petitioner also argues that during closing argument the prosecutor argued against the applicability of the mitigating factor of impairment of capacity to appreciate the criminality of one's conduct by saying that Petitioner knew right from wrong. (Doc. #9, p. 30.) Petitioner's counsel raised an objection at the time and the objection was overruled because the trial court found the remark to be "fair comment." (Id.) The prosecutor later made a second reference to Petitioner's knowledge of right from wrong at the time of the homicide. (Id.) Petitioner argues that the "right from wrong" test was inapplicable, was a test used for purposes of establishing insanity, and was not the proper legal context within which the jury was to consider the mental mitigating elements contained in the Florida Statutes. (Doc. #9, pp. 29-31.)

The Florida Supreme Court found that on direct examination, the defense's psychiatrist testified that Petitioner "probably knew the difference between right and wrong," and on cross-examination, testified that Petitioner suffered from no serious mental illness, reiterating that Petitioner knew right from wrong at the time of the murder in spite of the drugs and alcohol he had ingested. Lucas, 568 So. 2d at 21. The Florida Supreme Court "agree[d] with the trial court that the prosecutor's remark constituted a fair comment and disagree[d] with Lucas' claim that the remark misled the jury." Id.

-75-

The standard of review of a state prosecutor's closing argument was set forth in <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974).  To grant habeas relief, the Court must find that closing argument comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Id.</u> at 643. The argument made by the prosecutor falls far short of this standard.  Therefore, the Court finds that the decision of the Florida Supreme Court is not contrary to, or an unreasonable application of, clearly established federal law.

## L.  **Ground Twelve: Judicial Notice of Guilt-Phase Convictions**

Ground XII asserts that the trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights by taking judicial notice and informing the sentencing jury of the fact that Petitioner was found guilty of the attempted first-degree murders of Terri Rice and Richard Byrd, Jr. in 1977.  (Doc. #1, pp. 28-29; Doc. #9, pp. 31-33.)  Petitioner argues that the State's request for judicial notice was untimely filed, that judicial notice relieved the State of part of its burden of proving aggravating circumstances, in violation of <u>In re Winship</u>, 397 U.S. 358, 364 (1970) (Due Process Clause requires government to prove every element of criminal charge beyond reasonable doubt to obtain conviction), and that the state statute under which the trial court took judicial notice was inapplicable because it applied only to criminal proceedings related to crimes committed after July 1, 1979.  (Doc. #1, pp. 28-29; Doc. #9, pp. 31-33).  It is undisputed

(Doc. #14, p. 97) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's fourth direct appeal (Doc. #16, Exh. C8, pp. 35-39).

The Florida Supreme Court found this issue to "merit little discussion . . . [and found that the trial court] did not err in taking judicial notice of Lucas' prior convictions of attempted first-degree murder.  Those convictions were in that [trial] court's records and not subject to any reasonable dispute because they had been established beyond any reasonable doubt." Lucas, 568 So. 2d at 20 n.2.

Petitioner has not cited any U.S. Supreme Court case holding that a state court could not take judicial notice of its own or another court's records establishing a defendant's prior criminal conviction, where that prior conviction is an element of the offense.  Federal circuits have upheld the taking of judicial notice to establish a defendant's prior conviction.  E.g., United States v. Brandon, 214 Fed. Appx. 315, 317 (4th Cir. 2007); 469 F.3d 194, 202-03 (1st Cir. 2006); United States v. Vega-Barajas, 185 Fed. Appx. 579 (9th Cir. 2006).  Therefore, this claim is without merit.

## M.  Ground Thirteen: Pain and Suffering of Surviving Victims

Ground XIII asserts that the trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights by allowing the State to introduce, at the penalty phase trial, evidence of the mental anguish and physical pain suffered by Terri Rice and Richard

Byrd, Jr., the attempted murder victims.  Petitioner argues that this evidence did not add anything to the character analysis of Petitioner, served only to distract the jury, and was unduly prejudicial.  (Doc. #1, pp. 29-30; Doc. #9, pp. 33-35).  It is undisputed (Doc. #14, p. 99) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's fourth direct appeal (Doc. #16, Exh. C8, pp. 40-47).

The Florida Supreme Court rejected Petitioner's arguments, stating:

> The two victims who survived Lucas' attack testified at the resentencing proceeding.  Lucas now claims that their recounting the episode unduly prejudiced him and misled and confused the jury because their physical and mental suffering became a feature of the trial.  We disagree. Testimony by the victims, or others, about prior crimes is admissible if the defendant is given the opportunity to confront the witnesses.  Moreover, because a jury cannot be expected to make a decision in a vacuum, it must be made aware of the underlying facts.  Defense counsel cross-examined these witnesses, and we do not find that their testimony unduly prejudiced Lucas. Additionally, their testimony was not the type of victim impact evidence prohibited by Booth . . .

Lucas, 568 So. 2d at 21 (internal citations and quotations omitted).

The Court agrees that this testimony was not barred by Booth, both before and after a portion of Booth was overruled by Payne, as discussed above.  Federal habeas relief based on a decision to admit evidence can only be granted if the erroneous admission violated Petitioner's federal constitutional rights.  Estelle v.

McGuire, 502 U.S. 62, 68 (1991).  This requires that the admission of evidence rendered Petitioner's state proceedings fundamentally unfair before federal habeas relief can be granted, i.e., that the wrongly-admitted evidence is a crucial, critical, highly significant factor.  Thigpen v. Thigpen, 926 F.2d 1003, 1012 (11th Cir. 1991).  Nothing in the prosecutor's argument comes close to meeting this standard.  Petitioner's reliance on Gardner v. Florida, 430 U.S. 349 (1977), is misplaced because that case involved a court's reliance on confidential sentencing information, a situation not presented by this testimony given to the jury. Accordingly, the decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law.

**N.   Ground Fourteen: Discriminatory Admission of Hearsay Evidence**

Ground XIV asserts that the trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights by permitting the State to introduce damaging hearsay testimony against the Petitioner at the penalty phase, while denying Petitioner the opportunity to present hearsay testimony critical to his defense. Petitioner argues that while the admission of hearsay detracts from the heightened reliability required in capital sentencing procedures and may infringe on his constitutional rights of confrontation and cross-examination, if hearsay is going to be admitted, the defense has as much right as the State to present hearsay evidence.  (Doc. #1, pp. 31-32; Doc. #9, pp. 36-39).  It is

undisputed (Doc. #14, p. 102) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's fourth direct appeal (Doc. #16, Exh. C8, pp. 48-53).

The Florida Supreme Court rejected both the argument that hearsay should not be admissible in penalty proceedings and that the particular circumstances of Petitioner's penalty proceeding were improper. As to the first issue, the Florida Supreme Court stated:

> Subsection 921.141(1), Florida Statutes (1985), permits the introduction of hearsay if the opposing party is given the opportunity to rebut it. Lucas now claims that the state should not be allowed to present hearsay evidence in penalty proceedings. We have rejected similar claims before, and do so again here.

Lucas, 568 So. 2d at 21 (citations omitted). As to the second hearsay related issue, the Florida Supreme Court stated:

> The instant claim is based on the state's eliciting from one of its witnesses the victim's telling him of threats made toward her by Lucas. As the state points out, however, the record discloses that on direct examination it questioned the witness only about a threat to the victim that Lucas made to that witness. On cross-examination the defense questioned the witness, over the state's objection, about threats against Lucas made by the victim. Only on redirect examination did the state ask about the victim's telling the witness about threats made against her. The defense opened the door for this line of questioning, and we find no error here.
> As another part of this issue, Lucas claims that the trial court erred in not allowing him to introduce hearsay. Much of Lucas' mitigating evidence dealt with his drug and alcohol use the day of the killing. On the day in question he purchased drugs from a woman from Miami who was visiting his neighbor. The neighbor testified for the defense and admitted that she did not know if the drug was THC or PCP. The court sustained the

state's objection to the defense's asking the neighbor
what the Miami woman told her the drug was.
    The defense did not proffer what the witness would
have said if allowed to answer the question.  A proffer
is necessary to preserve a claim such as this because an
appellate court will not otherwise speculate about the
admissibility of such evidence.  We therefore find this
claim has not been preserved for review.

Lucas, 568 So. 2d at 21-22 (citations and footnote omitted).

Petitioner cites no U.S. Supreme Court case holding that
hearsay is not admissible in the penalty phase of capital
proceedings.  Indeed, under some circumstances hearsay must be
admitted as a matter of due process.  Green v. Georgia, 442 U.S. 95
(1979).  Additionally, "the Eighth Amendment does not deprive the
State of its authority to set reasonable limits upon the evidence
a defendant can submit, and to control the manner in which it is
submitted."  Oregon v. Guzek, 546 U.S. 517, 526 (2006).  While
Petitioner cites Gardner v. Florida, 430 U.S. 349 (1977), nothing
in Gardner stands for the proposition that hearsay is not
admissible in a capital sentencing proceeding.  Petitioner also
cites no U.S. Supreme Court case holding that hearsay would be
inadmissible where, as here, the defense opened the door to that
testimony.  Accordingly, the decision of the Florida Supreme Court
was not contrary to, or an unreasonable application of, clearly
established federal law.

Petitioner argues that his hearsay evidence, however, should
have been admitted because the person who sold the drug to him, his
neighbor's friend from Miami, was in the best position to know what

-81-

the drug actually was.  (Doc. #9, p. 38.)  The Court finds no basis
to believe that this is true because, as the Florida Supreme Court
noted, there was no proffer as to what the witness would have said
or what, if anything, the Miami friend knew about the actual
identity of the drug.  Thus, unlike Green, this is not a situation
where the excluded evidence was highly relevant to a critical issue
and substantial reasons existed to assume its reliability.  Green,
442 U.S. at 97.  Accordingly, the decision of the Florida Supreme
Court was not contrary to, or an unreasonable application of,
clearly established federal law.

Additionally, the Florida Supreme Court found that the issue
of admitting Petitioner's hearsay evidence had not been preserved
because there was no proffer; this lack of a proffer implicates an
independent state law basis that precludes review of the issue by
a federal habeas court.  Francois v. Wainwright, 741 F.2d 1275,
1284 (11th Cir. 1984).  Petitioner has not shown cause and
prejudice or a fundamental miscarriage of justice to excuse the
procedural default.

**O.  Ground Fifteen: Collateral Crime Evidence**

Ground XV asserts that the trial court violated Petitioner's
Sixth, Eighth, and Fourteenth Amendment rights by permitting the
State to introduce prejudicial evidence of a collateral crime
(burglary at the victim's house) during the penalty phase, though
the State failed to give Petitioner the required notice pursuant to
Florida Statute § 90.404(2)(b)(1).  The State had notified

Petitioner that it intended to introduce evidence of Trespass After Warning, but the testimony of Eleanor Piper suggested, in Petitioner's view, that he had committed a burglary at her home. (Doc. #1, pp. 32-33; Doc. #9, pp. 39-40).  It is undisputed (Doc. #14, p. 106) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's fourth direct appeal (Doc. #16, Exh. C8, pp. 54-56).

The Florida Supreme Court found that:

> Over a defense objection the court allowed the victim's mother to testify that, a few days before the murder, Lucas had been arrested for trespass after warning on their home and stated that Lucas 'had broken in [in] some way or another."  Two weeks before trial the state notified the defense that it intended to introduce this evidence.  Lucas now claims that the notice did not meet the requirements of subsection 90.404(2)(b)(1), Florida Statutes (1985) and that the witness' accusing him of burglary surprised and unduly prejudiced him.

Lucas, 568 So. 2d at 22.  After discussing the highly regulated nature of the admission of evidence of other crimes, the Florida Supreme Court stated:

> We agree with the state that the reasons for being so strict with evidence of other crimes, i.e., protecting the innocent from being convicted by association, are less imperative where, as here, the defendant's guilt has already been established.  Moreover, a lay person, uneducated in legal definitions, whose locked home has been entered by an uninvited person might well say that the home had been broken into.  The testimony related to Lucas' character and record and to the circumstances of the offense.  No reversible error occurred regarding this issue.

Id.

As the trial court and the prosecutor correctly stated at the resentencing trial, the testimony that Petitioner "had broken in [in] some way or another" was not testimony that Petitioner had committed a burglary, despite defense counsel's repeated characterization to the contrary. "Burglary" under Florida law was "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, . . ." FLA. STAT. § 810.02(1)(a). There was no evidence that Petitioner had the intent to commit an offense within the house.

Even if the testimony was sufficient to suggest that Petitioner had committed a burglary, there was no constitutional violation. Petitioner must establish that due process requires that he receive more notice of the State's intent to use the evidence that he was provided, and the U.S. Supreme Court has found that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." Wardius v. Oregon, 412 U.S. 470, 474 (1973). See also Weatherford v. Bursey, 429 U.S. 545 (1977). The U.S. Supreme Court has stated that these cases are "strongly against the validity of petitioner's claim" that he had a right to notice of the evidence the state plans to use to prove its case. Gray v. Netherland, 518 U.S. 152, 168 (1996).

Petitioner cites Gardner and Gregg v. Georgia, 428 U.S. 153 (1976), as the only U.S. Supreme Court cases in his argument. Neither case addressed this issue, and Gray found such a claim to

notice to be "much more akin to the one rejected in <u>Weatherford</u>, supra, than to the one upheld in <u>Gardner</u>." <u>Gray</u>, 518 U.S. at 168-69.  Accordingly, the decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law.

**P.  Ground Sixteen: Jurors Taking Notes Without Instruction**

Ground XVI alleges that the trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights by allowing the jurors to take notes during the penalty phase and to use the notes during deliberations, without instructing them on the proper way to take and use notes (Doc. #1, pp. 33-34; Doc. #9, pp. 40-42).  It is undisputed (Doc. #14, p. 109) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's fourth direct appeal (Doc. #16, Exh. C8, pp. 57-60).

At the resentencing proceedings, the trial court told the jurors that they would be permitted to take notes throughout the proceedings, that notetaking was optional, and that no one else would read the notes.  (Doc. #16, Exh. C2, pp. 226-27.)  Petitioner objected to the jurors being allowed to take notes (<u>Id.</u> at 230) and later objected to the jurors being allowed to take their note pads into the jury room and to use them during deliberations.  (Doc. #16, Exh. C4, p. 724.)  Both objections were overruled.  (Doc. #16, Exh. C2, p. 230; Exh. C4, p. 724.)  Petitioner never requested that any type of jury instruction be given on the subject of notetaking.

The Florida Supreme Court found that the notetaking issue was one meriting little discussion.  The Court stated: "Allowing jurors to take notes is within the trial court's discretion."  <u>Lucas</u>, 568 So. 2d at 20 n.2.

Petitioner has cited no U.S. Supreme Court case related to this issue, and the Court has found none.  Therefore, the decisions of the Florida courts cannot be contrary to or an unreasonable application of clearly established federal law.  Additionally, the failure to give the type of jury instruction that Petitioner now claims was necessary, but that he did not request of the trial court, was found not to be erroneous in <u>United States v. Rhodes</u>, 631 F.2d 43, 45-46 (5th Cir. 1980).  Accordingly, the decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law.

**Q.  Ground Seventeen: Peremptory Challenges**

Ground XVII alleges that the State's use of peremptory challenges to systematically exclude all potential jurors who expressed reservations about the death penalty produced a jury uncommonly willing to recommend that Petitioner receive the death penalty, in violation of his Sixth, Eighth, and Fourteenth Amendment rights (Doc. #1, pp. 34-36; Doc. #9, pp. 42-45).  It is undisputed (Doc. #14, p. 111) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's fourth direct appeal (Doc. #16, Exh. C8, pp. 61-65).

During jury selection for the resentencing, three prospective jurors expressed reservations about the death penalty.  (Doc. #16, Exh. C1, pp. 60, 86-87, 186-87; Exh. C2, p. 210.)  None of the reservations were sufficient to justify excusal for cause, and the prosecutor did not challenge any of the three for cause.  The prosecutor did, however, exercise peremptory challenges to excuse all three jurors (with defense objections raised and overruled as to all three).  (Doc. #16, Exh. C1, pp. 143, 200-201; Exh. C2, p. 223.)  Petitioner argued that the use of peremptory challenges in this way was prohibited under the Sixth Amendment after Batson v. Kentucky, 476 U.S. 79 (1986).  The Florida Supreme Court rejected this argument as one meriting little discussion, stating, "We reject Lucas' contention that Batson v. Kentucky . . . , which prohibits racially motivated peremptory challenges of black prospective jurors, should be extended to peremptory challenges of prospective jurors based on their opinions regarding the death penalty."  Lucas, 568 So. 2d 20 n.2.

While peremptory challenges are part of our common-law heritage, they "are not of federal constitutional dimension." United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000); Ross v. Oklahoma, 487 U.S. 81, 88 (1988).  Batson, of course, continues to be the law with regard to the exercise of peremptory challenges founded upon racial motivations.  Snyder v. Louisiana, 128 S. Ct. 1203 (2008).  "Batson challenges" have been extended to gender, J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994), ethnic origin,

Hernandez v. New York, 500 U.S. 352 (1991), and non-minority groups, Powers v. Ohio, 499 U.S. 400 (1991); Campbell v. Louisiana, 523 U.S. 392 (1998), and can be asserted whether the peremptory challenges was made by the prosecutor (Batson) or the defendant, Georgia v. McCollum 505 U.S. 42 (1992), or in criminal cases (Batson) or civil cases, Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991). No Supreme Court case, however, including Gray v. Mississippi, 481 U.S. 648 (1987), has extended Batson to incorporate the peremptory challenge of persons who have reservations about the death penalty. The Supreme Court has rejected the argument "that a prosecutor's use of peremptory challenges to eliminate a distinctive group in the community deprives the defendant of a Sixth Amendment right to the 'fair possibility' of a representative jury." Holland v. Illinois, 493 U.S. 474, 478 (1990). Petitioner's reliance on Brown v. Rice, 693 F. Supp. 381 (W.D. N.C. 1988), is misplaced because this aspect of that decision was reversed in Brown v. Dixon, 891 F.2d 490 (4th Cir. 1989), cert. denied, 495 U.S. 953 (1990). Accordingly, the decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law.

**R.  Ground Eighteen: Clarity of Final Sentencing Order**

Ground XVIII[7] alleges that the trial court violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights because

---

[7]In both Petitioner's Petition (Doc. #1) and Memorandum of Law in Support (Doc. #9), Ground XVIII is mislabeled as "Ground XIII."

the Sentencing Order is not sufficiently clear to establish that the court engaged in a reasoned weighing of aggravating and mitigating circumstances (Doc. #1, pp. 36-37; Doc. #9, pp. 46-48).

**(1) Exhaustion and Procedural Default:**

In his Reply (Doc. #17, p. 7), Petitioner clarified that this argument pertains to his final sentencing order, rather than the fourth sentencing order cited in the Petition.   Petitioner presented this issue to the Supreme Court of Florida in his fifth direct appeal (Doc. #16, Exh. D10, pp. 50-68) and argued that a court's rejection of statutory mitigating factors is in violation of the Eighth and Fourteenth Amendments.   As such, the Court finds that Petitioner exhausted Ground Eighteen in the state courts.

**(2) Merits:**

The Florida Supreme Court stated: "We ordered resentencing because the findings of fact were not sufficiently clear.   Lucas now argues that the findings are still not clear and that the judge did not give proper consideration to the mitigating evidence.   Our review of the record, however, shows this claim to have no merit." Lucas, 613 So. 2d at 410.

Petitioner asserts that "[i]t is not clear from the sentencing order entered by the trial court just what [the trial court] found in aggravation and mitigation."   (Doc. #1, p. 36; Doc. #9, p. 46.) Petitioner also asserts that "[i]t is virtually impossible to discern from the confused and confusing sentencing order prepared

by the court what [the trial court] actually found in aggravation and mitigation." (Doc. #9, p. 46.) The Court disagrees.

Due process certainly requires a sentencing order that is clear enough to allow meaningful appellate review. Parker v. Dugger, 498 U.S. 308, 313-22 (1991); Proffitt v. Florida, 428 U.S. 242, 250-51 (1976). The sentencing order in this case (Doc. #16, Exh. D7, pp. 965-982) sets forth and discusses the aggravating and mitigating factors considered by the trial court. The trial court stated that there were two aggravating factors: (1) That Petitioner was twice convicted of prior crimes involving the use of threat or violence to the person, namely, the contemporaneous attempted first degree murders of Terry Rice and Richard Byrd, Jr.; and (2) That the first degree murder of Jill Piper was especially heinous, atrocious and cruel. (Doc. #16, Exh. D7, pp. 966-70.)

The trial court next sets forth and discusses, each in turn and in the order raised by Petitioner, fifteen mitigating factors, the evidence as to each factor, and the amount of weight to be accorded to each factor: (1) That the killing of Jill Piper was committed while Petitioner was under the influence of extreme mental and emotional disturbance (no credible supporting evidence found; very little weight accorded); (2) That Petitioner acted under extreme duress (no credible supporting evidence found; no meaningful weight accorded); (3) That Petitioner's capacity to conform the volitional aspects of his conduct to the requirements of the law was substantially impaired (supported by some evidence;

weight given was insufficient to counterbalance either of the aggravating factors); (4) That the killing was done for emotional or passionate reasons rather than from mere cold calculation (supported by some evidence; incapable of mitigating because the trial court did not find the corresponding aggravating factor of "cold, calculated and premeditated murder without any pretense, moral or legal justification"); (5) That Petitioner displayed good conduct while on death row since 1977, and has experienced change and self-improvement while in prison (considered in conjunction with mitigating factors numbered (7) Petitioner has shown genuine remorse, (8) Petitioner cared deeply for Jill Piper, and (9) Petitioner has been rehabilitated and is a good candidate for further rehabilitation) (each supported by some evidence, but discredited by contrary evidence; found not to be credible overall; very little weight accorded); (6) Petitioner has no significant history of prior criminal activity (supported by evidence; weight given was insufficient to counterbalance either of the aggravating factors); (mitigating factors (7), (8) and (9) are addressed above); (10) Petitioner has suffered an extreme emotional impact from having been sentenced to death previously and having the sentence set aside again only to face resentencing (supported by evidence; emotional impact of legal proceedings was a non-statutory factor intrinsically incapable of mitigating Petitioner's sentence); (11) Petitioner was physically and psychologically abused by his alcoholic father in his youth (insufficient

supporting evidence; incapable of mitigating sentence); (12)
Petitioner suffered from chronic and extreme alcohol and drug abuse
since his pre-teen years (supported by evidence; other than as
applied to formation of intent and volitional conduct (as discussed
pertaining to other factors), incapable of mitigating sentence);
(13) Petitioner was a nice person when sober and trusted with the
money and younger children of several witnesses (supported by some
evidence, but insufficient evidence to show such character in the
days and hours preceding the murder; weight accorded insufficient
to mitigate sentence); (14) On the day of the killing, Petitioner
was under the influence of PCP, marijuana and alcohol with the
resulting impaired ability to appreciate the criminality of his
conduct (found to be essentially identical to factors discussed
above; insufficient evidence to support; weight accorded
insufficient to counterbalance aggravating factors); and (15)
Petitioner has held gainful employment (little evidence to support;
given no weight).  (Doc. #16, Exh. D7, pp. 971-980.)

In contrast to Parker, 498 U.S. at 318-19, where the Florida
Supreme Court "did not consider the evidence of nonstatutory
mitigating circumstances" and "certainly did not conduct an
independent reweighing of the evidence," here, the trial court
listed each of the aggravating and mitigating factors, statutory
and nonstatutory, that it considered.  The trial court also
discussed the existence, or lack thereof, of any relevant evidence,
stated the amount of weight it accorded to each factor, its

determination of whether the mitigating factor outweighed either of the aggravating factors, and its rationale.  Thus, while Petitioner may disagree with the trial court's substantive conclusions, this does not render the trial court's order insufficiently clear to an unconstitutional degree, nor does it establish that the trial court failed to engage in a reasoned weighing of aggravating and mitigating circumstances.  Accordingly, the decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  Thus, this ground is denied.

**S.  Ground Nineteen:**

Ground XIX alleges that the trial court misapplied Florida's capital sentencing statute by including improper aggravating circumstances and excluding existing mitigating circumstances in the sentence weighing process, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights.  In particular, Petitioner asserts: (1) That the trial court improperly included the HAC aggravating factor; and (2) That the trial court omitted existing mitigating factors, including Lucas' good behavior in prison and his efforts to better himself by taking courses in prison.  (Doc. #1, pp. 37-38; Doc. #9, pp. 48-50.)

**(1) Exhaustion and Procedural Default:**

Respondent asserts that the claim concerning the HAC factor was not exhausted in state court because it was only challenged on state law grounds, not federal grounds.  (Doc. #14, p. 118.)  The Court disagrees.  Petitioner presented both issues to the Supreme Court of Florida in his fourth direct appeal (Doc. #16, Exh. C8, pp. 73-87).  Although Petitioner did not include any federal case law to support Issue 1, Petitioner nonetheless placed the Florida Supreme Court on notice of the federal issue by alleging that his sentence violated the Eighth and Fourteenth Amendments to the United States Constitution (Id. at p. 73).  This was sufficient to fairly present the federal issue.  Snowden, 135 F.3d at 735-36.  Therefore, the Court finds that Petitioner exhausted both issues of Ground Nineteen in the state courts.

**(2) Merits:**

As mentioned above, Petitioner presented both issues in Ground Nineteen (that the trial court improperly included the HAC aggravating factor; and that the trial court omitted existing mitigating factors) to the Supreme Court of Florida in his fourth direct appeal (Doc. #16, Exh. C8, pp. 73-87).  Petitioner now asserts that, "[a]lthough the Florida Supreme Court previously considered the applicability of the [HAC] aggravating circumstances to Petitioner's case," in Lucas, 376 So. 2d 1149, "the evidence that came in at Petitioner's new penalty trial may have differed

from that presented at his first trial, and it is appropriate for this [federal] court to examine the issue." (Doc. #9, p. 47.) Petitioner's concern, however, is moot and was fully addressed by the Florida Supreme Court decision in Lucas, 613 So. 2d 408, which was rendered after Petitioner's fifth direct appeal was filed. Further, the operative sentencing order (Doc. #16, Exh. D7, pp. 965-982) was entered by the trial court after Petitioner's fourth appeal was filed (upon which Petitioner's Nineteenth Ground relies), and affirmed by the Florida Supreme Court in Lucas, 613 So. 2d 408.

As to Issue 1, that the trial court improperly included the HAC aggravating factor because there is no factual basis for finding that the killing was especially heinous, atrocious, or cruel, the Florida Supreme Court stated to the contrary, that "the facts show the murder to have been heinous, atrocious, or cruel. Clearly, this murder was more than a simple shooting, and we affirm the trial court's findings regarding the aggravators." Id. at 411.

As to Issue 2, that the trial court omitted existing mitigating factors, including Petitioner's good behavior in prison and his efforts to better himself by taking courses in prison, it is clear from the record, and as discussed above in the Court's discussion of Ground Eighteen, that the trial court examined both statutory and nonstatutory mitigating factors, including the ones specified by Petitioner in Ground Nineteen (namely, Petitioner's good behavior in prison and his efforts to better himself by taking

courses in prison).  The decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  Thus, the issues raised in Ground Nineteen are without merit.

**T.  Ground Twenty:**

Ground XX alleges that Florida's death sentencing statute is unconstitutional as applied to Petitioner, under the Fifth, Sixth, Eighth, and Fourteenth Amendments, pursuant to the U.S. Supreme Court's holding in Ring v. Arizona, 536 U.S. 584 (2002).  In Ring the Supreme Court held that a sentencing judge, sitting without a jury, may not find an aggravating circumstance necessary for the imposition of the death penalty; the Sixth Amendment required that those circumstances be found by a jury.  536 U.S. at 585, 609. Respondent argues that, like the Arizona statute in Ring, the Florida statute allows the judge, sitting alone, to find aggravating factors and to impose a death sentence, in violation of the Sixth Amendment.  (Doc. #1, pp. 38-39; Doc. #9, pp. 51-68).  It is undisputed (Doc. #14, p. 120) that Petitioner exhausted this issue in the state courts by presenting it to the Florida Supreme Court in Petitioner's habeas petition (Doc. #16, Exh. F12, pp. 9-15).

The Florida Supreme Court rejected this argument, relying on Bottoson v. Moore, 833 So. 2d 693 (Fla. 2002) and King v. Moore,

831 So. 2d 143 (Fla. 2002).  Lucas, 841 So. 2d at 389.

Additionally, Ring is not retroactive to death penalty cases already final on direct review. Schriro v. Summerlin, 542 U.S. 348 (2004); Zeigler v. Crosby, 345 F.3d 1300, 1312 n.12 (11th Cir. 2003); Turner v. Crosby, 339 F.3d 1247, 1282-86 (11th Cir. 2003). Lucas's death sentence became final on October 4, 1993, when the U.S. Supreme Court denied certiorari after the Florida Supreme Court issued its affirming decision in Lucas v. State, 613 So. 2d 408 (Fla. 1992). See Lucas v. Florida, 510 U.S. 845 (1993). Lawrence v. Florida, 127 S. Ct. 1079, 1081 (2007). Therefore, petitioner's death sentence is not unconstitutional under Ring.

### V.  Conclusion

The Court finds that the following grounds were not properly exhausted in the state courts and are procedurally defaulted: Grounds I, II, a portion of VI, VII, portions of VIII, IX, and X. The Court finds that the remaining grounds and portions of grounds were found to lack merit on substantive bases.

Accordingly, it is now

**ORDERED:**

1.  Petitioner Harold Gene Lucas's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. #1) is **DENIED.**

2.  The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___5th___ day of September, 2008.

JOHN E. STEELE
United States District Judge